JAMES BROWN, PLAINTIFF IN ERROR, *v.* JOHN CLARKE, DEFENDANT.

By the law of Mississippi, a judgment is a lien upon personal as well as real estate from the time of its rendition.

Where there has been a judgment, an execution levied upon personal property, and a forthcoming bond, the property levied upon is released by the bond, and the lien of the judgment destroyed.

If, therefore, after this, another judgment be entered against the original defendant, this second judgment is a lien upon the property which has been released by the bond.

The lien thus acquired by the second judgment is not destroyed by subsequently quashing the forthcoming bond. The effect of such quashing is not to revive the first judgment, and thus restore the lien which was superseded by the execution of the bond.

If the forthcoming bond had been shown to have been void *ab initio*, the result would be different.

In cases of conflicting executions issued out of the federal and state courts, a priority is given to that under which there is an actual seizure of the property first.

The mode in which bills of exceptions ought to be taken, as explained in Walton *v.* The United States (9 Wheat. 651), and in 4 Peters, 102, will be strictly adhered to by this court.

THIS was a writ of error to the District Court of the United States for the Northern District of Mississippi, to bring up for review certain instructions delivered to the jury in an action of trover, brought by the defendant in error against the plaintiff in error, and in which the plaintiff below obtained the verdict.

The case was this. Brown, the defendant below, obtained a judgment of $8,640·37, by confession, against one Haywood Cozart, in the Circuit Court of Lafayette County, Mississippi, which was docketed on the 18th of May, 1840. Upon which execution was issued on the 6th, and delivered to the sheriff on the 20th of June following, and a levy made the same day on several slaves, the property of the defendant on the execution. A forthcoming bond was given by the defendant, with H. M. Cozart as surety, and which was approved of by Brown, the plaintiff.

This bond is in the penalty of double the amount of the judgment, made payable to the plaintiff in the execution, and conditioned well and truly to deliver the property levied on to the sheriff on the 17th of August (then) next, the day of sale, at a certain place, to be sold to satisfy the judgment, unless the same should be previously paid.

Clarke, the defendant in error, recovered a judgment of $2,117·31 against the same Haywood Cozart, in the District Court of the United States for the Northern District of Mississippi, at the June term of said court, 1840 ; upon which an execution was issued to the marshal of the district, and a levy made, on the 9th of November following, upon six of the slaves in the possession of Cozart, and which had been before levied on under Brown's execution. They were sold by the marshal on the 7th December thereafter, and purchased in by Clarke, the plaintiff, the highest bidder.

Brown. *v.* Clarke.

The sheriff returned upon the execution in the case of Brown *v.* Cozart, and upon the forthcoming bond, that the property was not delivered in pursuance of the condition, nor the money paid; and that it was therefore forfeited. And Brown, at the November term of the Circuit Court of Lafayette County, at which the execution was returnable, made a motion to the court to quash the bond, which was granted accordingly; the ground of the motion is not stated. And on the same day, the 23d of November, 1840, he sued out an *alias fieri facias* on the original judgment, returnable at the next term of said court.

To this execution, the sheriff returned that he had levied upon six slaves, naming them, in the hands of the Marshal of the Northern District of Mississippi, and also on other property which it is not material to notice. And further, that after the sale of the slaves by the marshal, he was indemnified by Brown, and required to make a levy·upon them on the 7th of December, 1840, and that, on the 4th of January following, he sold them, by virtue of the execution, to Brown, the highest bidder.

It further appeared, that, at the time the marshal levied on the slaves, the 9th of November, 1840, Cozart had some fifteen or eighteen other slaves in his possession; that the marshal took those levied on into his custody, and on the sale under the execution delivered them to Clarke, the purchaser; and that they were afterwards taken out of his possession by the sheriff, under his execution, by the direction of Brown; that Hiram M. Cozart, the surety in the forthcoming bond, was a brother of Haywood Cozart, was a man of but little property, and lived with his brother, some six miles distant from Brown; and that after the levy by the marshal, and before the sale, the two Cozarts left the State of Mississippi for Texas, and carried away with them the fifteen or eighteen slaves not levied on by this officer.

When the testimony closed, the counsel·for the plaintiff, Clarke, requested the court to give the following instructions to the jury, namely:— That if they believed the marshal made lawful levy on the property in dispute, the sale under his execution was valid, and vested in the purchaser a good title against other executions, whether founded on judgments of the state or federal courts; and that, if they believed that the sheriff levied his execution on the slaves and took a forthcoming bond, which was afterwards' forfeited, the same was a satisfaction of the original judgment, and the subsequent quashing of the same did not affect the rights of the plaintiff, acquired by virtue of the marshal's levy after such forfeiture of the bond; and also, if they believed that the sheriff, after his levy, took a forthcoming bond, which was afterwards forfeited, and that the slaves therein named remained in the possession of the defendant Cozart, the levy of the marshal, made after the forfeiture of said bond, and sale in pursuance thereof, were

A*

valid, notwithstanding the bond was quashed before the sale, but after the levy. And, further, if the jury believed that the defendant, Brown, agreed to approve of the surety on the forthcoming bond, and thereby permitted the slaves to remain in the possession of the said Cozart, the subsequent quashing of the bond upon his own motion did not place him in any better situation than if he had not issued an execution on the judgment. And, also, if they believed the approval of the bond by Brown was with a view to allow Cozart to remain in possession of said slaves, and to keep off and delay other creditors, then they should find for the plaintiff ; and, also, if they believed the conduct of Brown was fraudulent in obtaining proceedings on his judgment, then they should find for the plaintiff. — All which instructions were objected to by the defendant's counsel ; but the objection was overruled by the court, and the instructions given.

The counsel for the defendant proposed the following instructions, namely : — That, if the jury believed, from the evidence, the defendant, Brown, obtained a prior judgment in the Circuit Court of Lafayette County to the judgment obtained by the plaintiff, Clarke, in the District Court of the United States, Brown thereby obtained a prior lien upon Cozart's property for the satisfaction of his judgment, and that said lien could only be defeated and postponed by some act of Brown fraudulent in law ; that the taking of the forthcoming bond by the sheriff, and the quashing of the same, were not acts deemed fraudulent in law ; that the levy and sale of the slaves of Cozart by the marshal, by virtue of an execution on a junior judgment, was subject to the lien of the prior judgment, and communicated no title to the purchaser paramount to the lien of the prior judgment ; that the forfeiture of a forthcoming bond, which is quashed for want of conformity to the statute, is not such an one as has the force and effect of a judgment, because not in conformity to the statute. — Which instructions were objected to by the counsel for the plaintiff, and were refused by the court.

The record adds, the jury returned a verdict for the plaintiff, and the defendant moved the court to set it aside and grant a new trial, which motion was overruled. To all which the defendant excepts, and tenders this his bill of exceptions, which he prays may be signed and sealed by the court.

The case was argued by *Mr. Chalmers* and *Mr. Johnson*, for the plaintiff in error, and *Mr. Mason* and *Mr. Milton Brown*, for the defendant. Of these arguments, the reporter has no notes except of *Mr. Brown's.*

*Mr. Brown.*

John Clarke, the defendant in error, brought his action of trover

against James Brown, the plaintiff, in error, for five slaves, in the District Court of the United States for the Northern District of Mississippi. At the December term, 1841, of said court, a verdict was rendered for $ 3,225, the value of the slaves, and judgment entered accordingly for the amount of the verdict and costs. No exception appears of record to have been taken or filed to the opinion of the court during the progress of the trial. *After the verdict and judgment,* Brown, by his counsel, moved the court to *set aside the verdict, and grant a new trial.* The court, on argument, overruled the motion. The entry of this proceeding of record is as follows : —

" This day came the parties, by their attorneys, and then came on to be heard defendant's motion for a new trial ; and, after argument, as well in support of as against said motion, it is considered by the court that the same be overruled ; to which decision of the court overruling said motion, the defendant, by attorney, excepts, and tenders his bill of exceptions, which is signed and sealed by the court, and ordered to be made part of the record in this cause."

On this alleged error of the court, *in refusing to grant a new trial,* this writ of error has been sued out. That the refusal to grant a new trial is no ground for a writ of error is the well settled doctrine of this court. 3 Peters's Dig. 106 ; Barr *v.* Gratz, 4 Wheat. 213, 4 Cond. Rep. 430 ; United States *v.* Daniel, 6 Wheat. 542, 5 Cond. Rep. 170.

What in this cause purports to be a bill of exceptions is founded on and follows the overruling the motion for a new trial, and was, as appears on its face, drawn up and signed, not only *after* the trial, but *after* the motion for a new trial was disposed of. It contains nothing that can be reviewed by this court. It contains a mere statement of facts given in evidence, and the charge of the court to the jury, not made matters of record, but only retained in the memory of the judge, and recalled to regulate the discretion of the court in granting or refusing a new trial. Inglee *v.* Coolidge, 2 Wheat. 363.

A bill of exceptions, to be the foundation of a writ of error, can only be for matters excepted to at the trial, and must *appear of record* to have been actually reduced to form, and signed pending the trial ; and if, as in this case, it appear to have been drawn up and signed after verdict, it will be fatal. Walton *v.* The United States, 9 Wheat. 651 ; 5 Cond. Rep. 717. And although it may in some cases be the practice for the court to note exceptions at the trial, and reduce them to form and sign them afterwards, yet, in the language of the court in the case of Walton *v.* The United States (above cited), " In all such cases the bill of exceptions is signed *nunc pro tunc ;* and it purports, on its face, to be the same as if actually reduced to form and signed

pending the trial.    And it would be a fatal error if it were to appear otherwise ; for the original authority under which bills of exceptions are allowed has always been considered to be restricted to matters of exception taken pending the trial, and ascertained before verdict."

Even if exceptions had been taken at the trial and signed, the motion for a new trial would have been a waiver of them.    Cunningham *v.* Bell, 5 Mason's C. C. Rep. 161.    In that case, Mr. Justice Story said : — " The motion for a new trial cannot be entertained, according to the practice of the court, unless the bill of exceptions is waived.    The party has his election, either to proceed on the writ of error to the Supreme Court, in order to have it determined there whether the points were correctly ruled at the trial.; or, waiving that remedy, to apply here for a new trial.    But he cannot be permitted to proceed both ways."

It is believed that the authorities referred to show conclusively that the writ of error in this case cannot be sustained.    But should the court rule otherwise, and consider the matters contained in the bill of exceptions entitled to further examination, then the following statement of the case, in behalf of the defendant in error, is presented.

Clarke, the defendant in error, brought a suit against one Haywood Cozart in the District Court of the United States for the Northern District of Mississippi, and at the June term, 1840, obtained a judgment.    Cozart, in May, 1840, during the pendency of Clarke's suit, *confessed* a judgment for a large amount in the Circuit Court of Mississippi for Lafayette County, in favor of James Brown, the plaintiff in error.    Executions, in due time, issued on both these judgments, and went into the hands of the proper officer of each court.    Brown's execution was levied by the sheriff on twenty-two slaves, and the sheriff took a forthcoming or delivery bond, with surety, from Cozart.    The surety was approved by Brown himself.    The bond required the delivery of the slaves in August, 1840.    They were not delivered, and the bond, under the statutes of Mississippi, was returned forfeited, having in itself the force of a judgment, and entirely extinguishing the original judgment.

On the 9th of November, 1840, after this forfeiture of the delivery bond, the marshal levied Clarke's execution on five of the slaves previously levied on by the sheriff, and sold them, — Clarke becoming the purchaser.    On the 23d of November, 1840, Brown, by his own motion, procured the delivery bond from Cozart, taken on his own execution, and by his own express consent, to be quashed, with a view of reviving the lien of his original judgment, and overreaching that under which the sale of the five slaves to Clarke had been made.    Brown then issued an *alias fieri facias* on his original judgment, and seized upon the five slaves

purchased by and in the possession of Clarke, and had them again sold, he himself becoming the purchaser. Clarke brought his action of trover against Brown for the slaves taken out of his possession, and recovered judgment; to reverse which, this writ of error is sued out.

Was Clarke's title to the slaves in question complete by virtue of the sale to him by the marshal? That the sale was in all things regular is not denied; but it is contended that Brown's judgment against Cozart, in May, 1840, gave him a *prior lien* on the property of Cozart, which overreached Clarke's judgment in June, 1840.

In Mississippi, by the act of 1824, a lien on all the property of the defendant commences with the date of the judgment. Brown, therefore (aside from the circumstances under which his judgment was obtained), had a lien commencing with his judgment of May, 1840. *But this priority was lost, both by operation of law and his own act.* An execution issued, a levy was made, and a forthcoming or delivery bond taken, which, in August, 1840, was forfeited. The bond, after forfeiture, at once, and without further action on it, has the force and effect of a judgment. The statute enacts, "that any bond which shall be forfeited shall have the force and effect of a judgment, and execution may issue thereon against all the obligors thereon." How. & Hul. Dig. 653. By the uniform decisions of the Court of Appeals of Mississippi, under this statute, the forfeiture of a forthcoming bond creates a new judgment, in which the original judgment is merged and extinguished. In an early case on the subject, this language is employed by the court:—"The forthcoming bond, after forfeiture, becomes, by operation of law, a judgment; and as the law will not permit two judgments to exist at the same time against the same person for the same debt, this judgment, by operation of law, necessarily extinguishes the former." Clark *v.* Anderson, 2 How. Rep. 853. In a very recent case it is said, "The original judgment, after the forfeiture of the bond, is no longer in existence." Burns *v.* Stanton, 2 Sme. & Mar. 461. The lien of the first judgment ceases, and a new and more comprehensive lien arises upon this statutory judgment, embracing the property of both principal and sureties in the forthcoming bond. And no action of the court on the forfeited bond is necessary; as soon as the bond is forfeited, the old judgment is extinguished, and a *new lien* attaches. Lancashire *v.* Minor, 4 How. Rep. 351; Lusk *v.* Ramsey, 3 Mun. 434.

Brown's original judgment, therefore, was extinguished, and his lien rested on his statutory judgment of August, 1840. This the law designed to be ample, by requiring ample security on the bond. If it was in fact not ample, it was because of Brown's own act in directing the sheriff to take security, which he, without

such directions, would not have taken, and which Brown knew was not responsible.

In this posture of things, Clarke's lien, under his judgment of June, 1840, took precedence, and was entitled to prior satisfaction. While thus clearly entitled to precedence and priority, Clarke's execution was levied and the property sold, which Clarke purchased. Standing on this state of the case, it would be scarcely posssible to doubt Clarke's complete title.

But now comes a new point in the cause. Cozart, and his brother, who was irresponsible, but who had been taken as security in the bond by Brown's directions, gathered what property they could, and both put out to Texas. Clarke, by his diligence, had saved the five slaves in question. It became important, therefore, for Brown to get clear of his *new judgment*, and get back to his *old one*. Accordingly, he moved the court to quash the delivery bond, which was done ; on what ground does not appear. And it is believed no good ground existed ; and that, if this new state of things had not arisen, no such motion would have been made.

And now comes the question, what was the effect of quashing this bond. Its effect, as between *the parties themselves*, was to restore Brown to all his rights under his original judgment of May, 1840, without regard to his subsequent statutory judgment. But not so when the rights of *third persons* intervened. Clarke was no party to that proceeding, nor was he, or could he be, heard on the motion to quash the bond. Had he been a party, and been heard on the question, it is believed he could have successfully resisted the motion. His rights, therefore, cannot be affected by the proceeding. So far as his rights are concerned, they stand as though such motion had never been made or decided.

If Clarke's rights are to be affected, it can only be upon the doctrine of relation ; that the new judgment having been quashed, the old lien by relation was revived, to operate from the rendition of the first judgment. But it is a cardinal principle of the doctrine of relation, that it can never be extended to the prejudice of the rights of third persons. It leaves them as it finds them. Heath *v.* Ross, 12 Johns. 140 ; Jackson *v.* Bard, 4 Johns. 230. Then, although this proceeding restored Brown to his rights against Cozart, it cannot operate to divest the intermediate rights of Clarke, acquired without wrong on his part. This view does not, in the slightest degree, conflict with the cases of Andrews *v.* Doe, ex dem. Wilkes, 6 How. 554, and Commercial Bank of Manchester *v.* Coroner of Yazoo County, 6 How. 530. These cases relate to valid subsisting liens, not altered or affected by any circumstances subsequent to the rendition of the judgment.

Brown's priority of lien was not only lost by the extinguishment of his original judgment by the forfeiture of the forthcoming bond,

but it was also lost by his own act. The lien of a judgment is a mere security, conferring no *jus in rem*, and which may be voluntarily abandoned, either expressly or by implication; and when so abandoned, the property becomes freed from its influence, and subject to all the general incidents of other property.

The sheriff, it would seem, on making the levy, was not willing to let Cozart retain the property upon the faith of the security offered. It was his duty, therefore, to take the property into possession until sufficient security, was offered. Brown, however, stepped forward, approved and accepted the surety, which he knew to be insufficient, relying on Cozart's good faith rather than on the forthcoming bond, and discharged the sheriff from the responsibility of taking insufficient security. By this act he placed it in the power of Cozart to do what he afterwards did do, — run his property out of the country, leaving his creditors to suffer.

Brown, by voluntarily waiving his right to a good and sufficient surety to the forthcoming bond, and leaving the property in possession of Cozart, and by voluntarily suspending his right to proceed on his judgment and execution, lost the priority of lien which the law gave him; and which, being once gone by his own voluntary act, cannot be regained. The principle here contended for is analogous to that under which a surety may be discharged under an ordinary contract. If the creditor, without the consent of the surety, puts it out of his power to proceed for even a single day against the principal debtor, the surety is discharged. So, by parity of reasoning, if a judgment creditor suspend his right to enforce his lien but for a day by his voluntary act, his priority over other judgment creditors is gone.

The jury was also well authorized to find in favor of Clarke, on account of the course pursued by Brown in regard to his execution. It is to be observed that the judgment was obtained by *confession*, just before the setting of the court which rendered Clarke's judgment. Cozart was the neighbour, of Brown; his brother, the surety in the delivery bond, lived with him; he was poor, and wholly insufficient as surety for such an amount. With a knowledge of all this, Brown accepted him as surety in the bond, indorsed his approval upon it, thereby discharging the sheriff from responsibility for taking insufficient security, and permitted the negroes to remain in custody of Cozart. They so remained until the marshal levied the execution of Clarke, when both Cozarts absconded, and carried off the remaining slaves, enough, or nearly enough, to have satisfied Brown's execution. From these facts and circumstances, the jury were well warranted in concluding that the judgment was confessed, with the understanding that Cozart was to remain in possession of his slaves, on giving his brother as surety; that this was intended to keep off other creditors; and that, finding it did not have the desired effect, he

absconded to Texas. Such conduct was calculated to hinder other creditors, and was fraudulent and void as to Clarke, the present defendant in error.

In conclusion, the defendant in error, by his counsel, contends, that upon the whole case it appears that substantial justice has been attained, and that the judgment should be affirmed.

Mr. Justice NELSON delivered the opinion of the Court.

By the law of the State of Mississippi, a judgment is a lien upon the personal as well as real property of the defendant, from the time of its rendition (Smith *et al. v.* Everly *et al.*, 4 How. 178 ; Commercial Bank of Manchester *v.* Coroner of Yazoo County, 6 How. 350); and if the first judgment obtained by Brown against Cozart could be upheld against the objections taken to it, there is no doubt, according to the law of Mississippi, that the instructions given by the Court below to the jury were erroneous. That judgment was docketed on the 18th of May, 1840, whereas Clarke's was not recovered till the 16th of June following.

It is insisted, however, that the seizure of the property of the defendant by the sheriff, under the first judgment, and discharge of it on the execution and delivery of the forthcoming bond, operated to extinguish the lien, and let in that of the junior judgment of Clarke, so as to give it the preference. This raises the principal question discussed in the case.

By the act of 1827 (Laws of Miss., p. 123, § 2), the sheriff or other officer is required, upon the levy of an execution upon personal property, to take a bond, if tendered, with sufficient security, from the debtor, payable to the creditors, reciting the service of such execution, and the amount due thereon, in a penalty of double the amount of such execution, with condition to have the property levied on forthcoming at the day of sale ; and if the owners of such property or the defendant in the execution shall fail to deliver the same according to the condition of the bond, such sheriff or other officer shall return the bond so forfeited, with the execution, to the court from which the same issued, on the return day thereof ; and every bond so forfeited shall have the force and effect of a judgment, and execution shall issue against all the obligors thereon, &c.

Under this statute, it appears to have been uniformly held in the courts of Mississippi, that the bond thus given to the creditor on the seizure of the goods was intended as a substituted security for the lien acquired by the judgment and seizure ; and consequently, on its execution and delivery, the goods, by operation of law, are released from all charge, and left in the possession of the debtors as free and unencumbered as before it attached ; and if the property is not delivered, in pursuance of the condition, the remedy is then upon the bond, which on the breach or forfeiture becomes, by

operation of the statute, a statutory judgment against the defendant and sureties from that time, followed by a new lien upon the real and personal estate of all the obligors.   The original judgment is merged and satisfied by the new and more comprehensive statutory judgment upon the bond, and the remedy of the creditors limited to the enforcement of this judgment.

This is, in substance, the view of the statute as expounded by the courts of Mississippi in several cases, and particularly in the case of the Bank of the United States *v.* Patton *et al.* (5 How. 200) in the Court of Appeals, which was argued twice, and very fully considered by the court.   (Stewart *v.* Fuqua, Walk. R. 175 ; Witherspoon *v.* Spring, 3 How. 60 ; Archibald *et al. v.* Anderson, 2 How. 852 ; King *v.* Terry, 6 How. 513 ; Minor *v.* Lancashire, 4 How. 347.)   In the case of the Bank of the United States *v.* Patton, the court, speaking of what would have been the effect of the forthcoming bond, if the statute had not annexed to it the force of a judgment, say, — " As it releases the levy, and restores the property to the debtor, it is tantamount to a satisfaction of the execution, and the creditor would be left to pursue his remedy upon the bond."

The court then liken it to the replevin bond in Virginia, which had been held to be a substitute for the original judgment, and operated as a satisfaction ; and add, — " It was no doubt in view of this principle that the framers of our statute saw proper to relieve the creditors from the delay and expense of a second suit upon the bond, by giving to it after forfeiture the force of a judgment against all the obligors therein, with a consequent right to have execution on the same ; and also to provide, that no security should be taken on the execution which is sued out upon the new judgment."

It will be seen, therefore, that the forthcoming bond and statutory judgment consequent upon the forfeiture, in its operation and effect, reversed the original position of these parties in respect to the priority of lien under their respective judgments, and gave to Clarke, the plaintiff below, the preference, his judgment having been docketed the 16th of June, and the new judgment of Brown not taking effect till the 17th of August, the date of the forfeiture of the bond.   (Minor *v.* Lancashire.)

If the case stood upon this footing, it is very plain that Clarke, the purchaser under the sale of the marshal, acquired the better title to the property in question, and that the instructions were in conformity to the law of the case.

It is contended, however, that the quashing of the forthcoming bond, and consequently the new statutory judgment, operated to revive the original one, and to restore the priority of lien, the same as it stood before any of the proceedings on that judgment had intervened.

We do not assent to this view of the effect of the order vacating the new judgment, so far, at least, as respects the liens or rights of third parties which have legally attached in the mean time to the goods of the defendant, discharged from the original judgment by the giving of the forthcoming bond. After that lien was suspended or discharged, the original judgment being, in contemplation of law, satisfied by the new and substituted security, the debtor was at liberty to deal with the property as his own, and it remained in his possession, subject to any charge or lien impressed upon it either by the act of the party, or by operation of law, the same, after the forthcoming bond, as before the entry of the original judgment. Possibly as between the parties the judgment revived, but it would be against principle, and work manifest injustice, to give to it this retrospective operation, so as to extinguish the intermediately acquired legal rights of third persons. We deny to it this effect.

It would be otherwise, if the forthcoming bond had been shown to be void, as it might then be treated as a nullity, and as affording no foundation for the statutory judgment consequent upon the forfeiture. Under such circumstances, the lien of the original judgment would remain unaffected, and might be enforced by execution; it would then, of course, continue uninterrupted by the lien of any subsequent judgment entered up against the defendant.

This view of the statute was taken by the court of Mississippi, in Carleton *et al. v.* Osgood *et al.* (6 How. 285).

But no such ground is presented in the record before us; nor did it exist in point of fact in the case. On the contrary, the forthcoming bond was in conformity to the statute, and the only reason for the action of the court in quashing the proceedings, for aught that appears or has been shown, was either that the tribunal conceded to the plaintiff the right to vacate his own judgment at his election, and thus voluntarily give up all the rights acquired under it, or that the surety was irresponsible; which latter ground would probably have been unavailing had the fact appeared before the court, that Brown himself, with full knowledge of all the circumstances, approved of the sufficiency of the security.

At all events, it is enough to sustain the ground upon which we have placed the priority of lien upon the property, that, for aught appearing in the case, the new judgment of Brown upon the forthcoming bond was regular, and existed in full force and effect until set aside and vacated on his own motion. For, if so, it is clear, upon the statute and decisions of the courts of Mississippi, that the lien of his original judgment against Cozart became thereby lost and postponed, so as to let in that of the junior judgment of Clarke, and consequently the sale of the marshal, by virtue of the execution under it, vested in the purchaser the better title.

We have thus far examined this case upon the law of Missis-

sippi, where the cause of action arose, as we understand it to have been expounded and applied by the courts of that State.

Another view may be taken, leaving out of consideration the priority of lien as acquired under the judgments of the respective parties, and looking solely to priority as acquired by virtue of an actual seizure of the property under execution, regarding that as the test in cases where the conflicting executions issued out of the federal and state courts, and to the executive officers of the different jurisdictions. (Hagan *v.* Lucas, 10 Peters, 400.) In this aspect of the case, the legal result is equally decisive in favor of the right of the plaintiff below.

If we have not misapprehended the rule of law prevailing in Mississippi in the view already taken, the right to the property acquired under the seizure of the first execution of Brown became extinguished by the operation and effect of the forthcoming bond. No title, therefore, can be set up by virtue of that seizure.

The case, then, as it respects the right depending upon priority of actual seizure and legal custody of the property, instead of priority of judgment, stands thus : — The marshal levied upon the slaves on the 9th of November ; the sheriff not till the 7th of December following. The former, therefore, under the law giving effect to the first seizure, was entitled to the property, and of course the purchaser at his call acquired the better title.

In every view we have been able to take of the case, we are satisfied the judgment of the District Court was right, and should be affirmed.

The court have had some difficulty in noticing the exceptions taken to the instructions in this case, in the form in which they are presented upon the record. It is matter of doubt whether they point to the instructions given and refused to the jury, or the refusal of the court below to grant a new trial. If to the latter, no question is presented upon which error would lie, according to the repeated decisions of this court. (4 Wheat. 213 ; 6 Wheat. 542.)

The counsel were probably misled, in making up the record, by the practice in Mississippi, where error will lie to the appellate court for a refusal to grant a new trial by statute. (Laws of Miss., p. 493, § 53.) But the rule is otherwise in the federal courts. That State has also a statute providing for the case of exceptions to be taken in the progress of the trial in the usual form (p. 620, § 40), which is the form that should have been observed in this case. The practice is particularly stated and explained in Walton *v.* The United States (9 Wheat. 651), and in several later cases (4 Peters, 102).

The practice is well settled and exceedingly plain and simple, and will be strictly adhered to by the court.