JONES *et. al. v.* PEASLEY.

In attachment proceedings, a delivery bond, executed to the satisfaction of the sheriff, removes the lien from the property attached, and leaves it under the debtor's control, subject to his debts, or to another attachment levy ; and the fact of its being subsequently attached will not satisfy the conditions of the delivery bond.

The condition of the delivery bond can only be avoided when the property to be delivered has been lost or destroyed by unavoidable accident or without negligence.

ERROR *to Des Moines District Court.*

*Opinion by* GREENE, J.   This was an action of debt on a bond executed by Edwin Wilcox, as principal, and Joseph Upham and Francis J. C. Peasley as sureties, to release goods taken by attachment in favor of plaintiffs. Service only on Peasley who appeared and interposed several pleas in defence. Issue was joined upon the first and second, and the plaintiffs demurred to the third, fourth and fifth pleas, and filed their replication to the sixth, to which defendant demurred. The court overruled the demurrer to the three pleas, and sustained the defendants demurrer to the replication. The plaintiffs refusing to reply over to the four pleas, judgment was rendered against them on demurrer.

This ruling of the court upon the two demurrers is now assigned for error.

The third and fourth pleas allege in substance, that after the execution of the bond and the delivery of the goods to Wilcox, the same goods were taken from him, and his sureties by virtue of a writ of attachment in favor of Austin and Spicer, and by a like writ in favor of the Merchants Exchange bank of New York, both issued against Wilcox subsequent to the attachment, from which the goods were replevied by virtue of said delivery bond.

The fifth plea avers that one item of the goods—a piano— was taken from their possession by virtue of a writ of replevin issued at the suit of Susan Whittlesey, and that the balance of the goods were lost without their negligence.

We are now to inquire, do the facts alleged in each of the above pleas constitute a good bar to the action? Do they avoid the conditions of the bond?

The attachment law provides, that the property attached shall remain in the hands of the officer who served the writ, to abide the judgment of the court, unless the defendant shall give bond in double the value of the property, with two sufficient sureties, made payable to the plaintiff, " and conditioned that said property or its appraised value, shall be forthcoming to answer the judgment of the court in said suit ; " Rev. Stat. 79 § 10. The conditions are unqualified and explicit. They furnish no other alternative than the production of the property or its appraised value to answer the judgment. But the twelfth section of the act provides, that "should the property or any portion thereof be lost or destroyed by unavoidable accident or without negligence, the condition of said bond shall not be deemed to have been broken." No other circumstance or contingency, than such loss or destruction, can be alleged under the statute, to release the obligors from a compliance with the conditions of the bond.

But it is contended that the subsequent attachment, by which the law took unavoidable possession of the property from the obligors, should release them from liability ; that though the statute does not so expressly declare, yet such may be inferred as the intention of the law ; that the delivery bond was only intended to change the custody of the property from the hands of the sheriff into those of the defendant to abide the " judgment of the court ; " and that the levy is not released nor the attachment dissolved by the execution of the delivery bond.

If true that the levy is not released by the execution of

the bond, the other conclusions formed by counsel for defendant might be supported by law, but if such lien is extinguished by the bond, it would defeat the object of the statute and the remedy intended for the vigilant creditor, to decide that the obligors shall be released by the levy of a junior attachment on the same property. To support the position that the lien is not impaired by the delivery bond, the seventh section of the attachment act is cited—Rev. Stat. 79—which declares that the property attached shall be bound from the time of serving the writ. The tenth section provides that the property attached shall remain in the hands of the officer who served the writ, or in his care, unless a delivery bond is given. It is then to be restored to the defendant or to the person who may have replevied the same, upon condition that the property or its appraised value, shall be forthcoming to answer the judgment in the suit. Upon these conditions, then, the property is placed, from the hands or care of the officer, under the absolute control of the defendant, and the bond is substituted for the plaintiff's lien upon the property. The act appears to contemplate that the attachment is relinquished for the bond, and makes the sheriff responsible for its sufficiency. § 13. By requiring ample security on the bond, and by making the sheriff liable for its sufficiency it may well be assumed, that no other means of payment is designed by the law, and that it intended a release of the property from the attachment. The delivery bond fully answers the object of the attachment. And as it insures the payment of the debt, there can be no longer any motive at law, for regarding the attachment as operative. Having answered the purpose for which it was issued, its power ceases by its own limitation. Should the property be forthcoming agreeable to the conditions of the bond, it would not be placed under the attachment nor revive its force, but it might be placed under execution to satisfy the judgment in the suit.

We think it clear then, that the execution of the delivery

Jones *v.* Peasley.

bond left the property in possession of the debtor as free and unincumbered as it was before the attachment levy. He had it in his power to sell or otherwise dispose of the property; and if sold, the vendee's title would not be subject to the attachment lien. The fact that he had the right to retain or dispose of the property, that the express condition of the bond could be complied with, without restoring it to the officer, supports the position that the lien was released by the bond. This view is fully authorized in *Brown* v. *Clark*, 4 How. 4, in which it was held that property levied upon by execution is released by a forthcoming bond. This was in affirmance of the doctrine established in Mississippi where the bonds contain the separate condition to have the property levied on, forthcoming on the day of sale; and not in the alternative to bring forth the property, or its appraised value, as provided by our statute. Hence, under our law there is stronger reason for the rule that the bond vacates the lien. But on the other hand, the forthcoming bond of Mississippi upon a breach, or forfeiture becomes a statutory judgment against the defendant and sureties, and operates as a lien upon the real and personal estate of all the obligors; and this difference it is claimed, weakens the authority of *Brown* v. *Clark* in its application to this case. This objection is removed in the *Bank* of *U. S.* v. *Patton* et. al., 5 How. Miss., 200, in which the court declare what would have been the effect of the forthcoming bond, if the statute had not annexed to it the force of a judgment; and say, " as it releases the levy and restores the property to the debtor, it is tantamount to a satisfaction of the execution, and the creditor would be left to pursue his remedy upon the bond." This view is approved in *Brown* v. *Clark*, and hence that case has full application as authority, to the case at bar.

We conclude then that the attachment levy was released by the delivery bond, that the defendant thereupon regained his former right to the property; that as the plaintiff in the

attachment had taken the bond in substitution of the prop-
erty, he thereby relinquished all control or claim to it ; and
that defendant could dispose of it at his election. It follows
therefore, that the property was subject to the payment of
defendant's debts, and to any attachment levy, and if taken
by attachment or other legal process, such taking could not
satisfy the conditions of the bond. Those conditions are
absolute unless the property or some portion thereof be lost
or destroyed by some unavoidable accident or without neg-
ligence. No other excuse than such as will come within
the letter of this statute can be set up by the obligors ; no
other could have been contemplated by the law ; and this
we think was interposed for the benefit of sureties who may
have depended upon the property in the hands of the defen-
dant, or in their own charge, to meet the conditions of the
bond. In connection with this excusing clause in the act,
it is insisted that the relation and legal liabilities of bailor
and bailee subsisted between the obligors and obligees in
the bond. But the views already expressed, show that no
such relation can exist between the parties. The creditors
were never entitled to the possession, and after executing
the delivery bond, the defendant acquired exclusive right
over the property. Hence the argument will not apply, that
the obligors, like bailees were not responsible for losses
resulting from the strong arm of the law as from irresistible
force. If a subsequent levy or attachment should be admit-
ted as a good defence, it might result in great abuse and
injustice. Designing men could readily bring about the
very state of things, that would free them from their obli-
gation, and at the same time deprive the first attaching
creditor of all security. Junior or even fictitious creditors
might thus be preferred to those who have acted *bona fide*
and with diligence. It may readily be perceived without
illustration, how this result could be produced.

But it is argued, that if obligors are held to the strict
letter of the statute in their defence, it may result in great

hardship to the sureties. It is always hard for a security to pay the debts of another; it is however, the result of his own undertaking, and we can see no reason why a creditor acting upon the faith of his assumption should be deprived of his dues upon any other ground than that expressed in the act.

The other points raised in this case need not be considered. Sufficient has been said to show error in the court below in overruling the demurrer to the third, fourth and fifth pleas.

Judgment reversed.

*Henry W. Starr*, for plaintiffs in error.

*L. D. Stockton*, for defendant.