ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

---

CANDLER and WAITE *ads.* THE MAYOR, ALDERMEN, and COMMONALTY of the city of New-York.

THIS was an action of *debt*, tried at the New-York circuit in Feb. 1827, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The bond on which the action was brought, was produced and admitted. It recited that S. Candler, master of the ship Venus, had lately arrived at the port of New-York, from London, in said ship, and brought fifty alien passengers, named and described in a written report annexed to the bond, and was conditioned that if the obligors should indemnify and save harmless the mayor, &c. and the overseers of the poor of the city of New-York, from all expense and charges which should or might be incurred for the maintenance and support of any of the said persons and their children, in case any of them should, at any time within two years after the said importation, become chargeable to the said city, then the same to be void. *Sarah Green* was one of the persons named in the report. The declaration averred, that she became chargeable to the city of New-York, within the two years, &c. and that the commissioners of the alms-house, being the overseers, &c. were obliged to expend, and did lay out and

A bond to indemnify and save harmless the mayor, aldermen and commonalty of the city of N. York from all expense and charge which may be incurred for the maintenance and support of passengers brought from a foreign country in a ship or vessel is valid, and not repugnant to the constitution or laws of the United States.

Where a bond of indemnity is given to save harmless a city or town from the support and maintenance of any persons who may become chargeable to such city or town, and such support is afforded by the overseers of the poor, in a proper case, an action may be maintained on the bond, although a previous order for such support has not been given by the proper authority.

In ascertaining the amount of recovery in an action on such bond in the city of New-York, it is not correct to average the whole expenses of the alms-house establishment amongst its inmates, but an allowance should be made as upon a *quantum meruit*.

The making of orders for the support of paupers, is inapplicable to the alms-house establishment in the city of New-York.

ALBANY,
Oct. 1828.

Candler
ads.
Mayor, &c. of
New-York.

expend $300 about her maintenance and support. The defendants pleaded, 1. *Non est factum*; 2. That Sarah Green did not become chargeable; 3. That the commissioners were not obliged to pay any sum of money for the maintenance, &c.

The steward of the alms-house testified, that in August, 1821, by the direction of alderman *Furman*, the superintendent, and also commissioner of the alms-house and bridewell in the city of New-York, he removed Sarah Green from a field near the alms-house, where she was lying in a very destitute condition, and almost naked, into the alms-house. He further stated, that the alderman had seen and examined her when she was so admitted; but no examination in writing, or written order for her admission was produced. The clerk of the alms-house produced the books of the establishment, from which it appeared that Sarah Green was admitted into the alms-house, on the 17th August, 1821, and discharged on 30th June, 1824. That the account for her support appeared to have been paid, at the rate of $2 per week, up to 29th September, 1821; and that from that time until 7th June, 1824, there appeared a charge on the books for her support, of 140 weeks, at $2 per week, amounting to $280, which was rendered when capt. Candler took the pauper out of the alms-house on trial. That the weekly charge is a reasonable, and the usual charge for grown persons supported under bonds of indemnity in the alms-house. That the annual expenses of the establishment are about $80,000, and that the whole cost of the same was about $500,000. A commissioner of the alms-house testified, that he was appointed such commissioner and resident superintendent, in November, 1821, and had so continued to the time of the trial, and was proceeding to estimate the expenses of the alms-house, when the counsel of the defendants objected to the admissibility of such evidence. The judge decided that the question was, what reasonable and proper allowance ought to be made to the plaintiffs for the support of Sarah Green; and that to enable the jury to ascertain such allowance, evidence of the general expense of the alms-house establishment, and the mode of making accounts for the sup-

ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

port of persons therein, might be submitted for the consideration of the jury, as well as particular proof of the circumstances of the case of any individual therein, relative to whose support a question might be litigated. The counsel excepted, and the witness testified, that the annual expenses of the alms-house, during the time that he had acted as superintendent, were from $80,000 to $85,000, exclusive of interest on the buildings and the salaries of the officers; that the whole expenses last year were about $120,000; that when Sarah Green was there, the expenses were rather more; that when averaged upon all the persons in the alms-house, the amount would be about $2 per week upon each individual; that the accounts at the alms-house are made out as well in reference to the actual expenses of the establishment annually, as to the interest of the cost of the buildings; that the books and accounts are kept under the direction of the commissioners at the alms-house, and that he considered the account or bill rendered to the defendants as reasonable and proper. On his cross-examination he further stated, that in his estimate were included all the sick and the children, (counting two to a grown person,) and the hospital expenses of the sick.

The plaintiffs having rested, the counsel for the defendants moved for a nonsuit; 1. Because, under the constitution and laws of the United States, the plaintiffs had no power to exact the bond given in this case; 2. Because there had been no inquiry by a justice of the peace or commissioner of the alms-house, whether Sarah Green was entitled to relief as a pauper, and chargeable to the plaintiffs; 3. Because no order had been made, directing a weekly allowance to the pauper; 4. Because no entry had been made, in any book, shewing the weekly or other allowance made to her, or the cause of the necessity of such allowance; 5. Because the evidence offered, to shew the amount which the plaintiffs had a right to recover, was vague, insufficient, and improper, being derived from an estimate of all the expenses of the alms-house, averaged upon all the paupers therein; which motion was denied.

ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

The counsel for the defendants then required proof, that Sarah Green was in fact an indigent person, and entitled to relief from the plaintiffs when she was received into the alms-house, which the judge directed to be given : whereupon, the situation in which she was found was again stated ; that she was employed as an assistant in the nursery of the establishment, and soon took the charge of it as superintendent, where there are usually 70 or 80 children, and continued in such charge for 2 years ; that her services were not equivalent to her support ; that there were a hundred women in the house, either of whom could have taken her place in the nursery ; that she was necessarily kept in the alms-house ; if she had been dismissed, she would soon again have required aid, unless she had been taken care of by a friend ; that she never *applied to be discharged,* and when taken away, was very unwilling to go ; that the services she rendered, in any other situation, would have been worth her support ; but in the alms-house, her place could have been supplied without expense. The defendants proved, that since Sarah Green had been taken from the alms-house, she had resided with captain Candler, as a servant : that she was an excellent servant, and her services worth $8 per month ; that the plaintiffs had once offered to accept $105, for their charges for the support of the pauper ; which evidence was received, though objected to as inadmissible, on the ground that the offer was made in a treaty for a compromise.

The judge charged the jury that they must decide, *first,* whether Sarah Green was a pauper, and properly chargeable to the city of New-York ; *secondly,* how long she was chargeable as such pauper, and how long the necessity continued of keeping her in the alms-house ; that whilst it was probable she would be brought back there, if dismissed, so long it was proper to retain her ; that, considering the circumstances under which she was admitted, her never having applied to be discharged, and her unwillingness to leave the place, it was for them to say whether the commissioners ought to have driven her out of the house ; that returning health might not be in all cases a good reason to discharge a pauper ; that if the probability existed, that a pauper would in-

ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

~~lantly become again a subject for the house, if discharged, it would be inhuman to dismiss such person ; but that, unless there was reason to believe that she would so return, and unless she was unable to support herself, the jury ought not to consider the commissioners as justified in retaining her. And as to the damages which they should allow, his honor stated that every pauper was not to be considered equally burdensome ; and that if the pauper in this case rendered valuable services, they ought to be taken into consideration ; that the plaintiffs were only entitled to remuneration, to be regulated in reference to the expense occasioned by the support of the pauper. The defendant's counsel excepted to the two first points in the charge of the judge. The jury found a verdict for the plaintiffs, and assessed the damages at $105.

*R. Sedgwick,* for defendants. The plaintiffs had no right, under the constitution and laws of the United States, to exact the bond on which this action is brought. It is an interference with the powers of congress. The ship Venus was a licenced vessel ; and, according to the principles established in *Gibbons* v. *Ogden,* (9 *Wheaton,* 1,) had a right to enter any port in the U. S. Her employment was not unlawful, the second section of the *alien act* permitting aliens to emigrate to this country on reporting themselves.

It was necessary to have shewn, on the trial, that the plaintiffs had become legally chargeable with the support of the pauper, in the mode prescribed by the statutes of the state. The commissioners of the alms-house have the same powers that *justices of the peace* and *overseers of the poor* have under " the act for the relief and settlement of the poor." (2 *R. L.* 439, 40.) By the general act for the relief, &c. of the poor, it is made the duty of a justice and an overseer to make inquiry into the state and circumstances of the pauper, and if it shall appear necessary, the justice may make an order in writing for the weekly allowance, and the overseer, in such case, must make an entry in a book of the allowance and the cause of such necessity ; and if he neglects to make such entry, he forfeits and loses all money paid for the sup-

ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

port of the pauper. (1 *R. L.* 287, 289.) The board of commissioners consists of five, a major part of whom are authorized to act. Their fiat is necessary, "to entitle the pauper to a seat at the public table." In this case, the inquiry was made by but *one* of the commissioners. No order was made; and it is settled by the highest judicial authority in our state, that overseers have no right to appropriate the public money for the support of the poor, in any case, without the previous order of a justice. (5 *Cowen,* 644, 654.) If the order might be dispensed with, inasmuch as the commissioner acted both as overseer and justice, why should he be excused, in the former character, from making an entry of the weekly allowance. Had this been done, there would have been some evidence of a judicial inquiry. No order being made, an overseer is not bound to support or provide for a pauper; and not being under an obligation to do so, he is not entitled to claim an indemnity for expenses incurred by him. For the protection of public officers, the law presumes every act done which it was their duty to do; but such presumption is not admitted when its effect is to charge a third person, and the acts are necessary to be shewn, to lay the foundation of an action.

Whether a person is in such indigent circumstances as to require relief by public support, is to be determined by the admitting officers, and not by a jury. In this case the question was submitted to a jury. The amount of the allowance must also be fixed by those officers, either by an order, or by an entry made on the admission of the pauper, or the action cannot be maintained. The evidence resorted to in this case demonstrates the fitness and necessity of such rule; for the damages were sought to be established by averaging the interest of the public buildings, and the annual charges of the establishment amongst the resident paupers; and if their number should happen to be sufficiently reduced, it might so chance that the charge would be $250 per day.

*M. Ulshoeffer,* for the plaintiffs. Where there is a county poor house establishment, the estimate of an account for the support of a pauper cannot be by proof of so much money

ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

paid out, but must necessarily be a *quantum meruit.* (3 *Burns'
Justice,* 850.)   An order of a commissioner of the alms-house, was not necessary to authorize the expenditure of monies in the support of the pauper.   The statute relative to the city of New-York, authorizes the corporation to establish ordinances and regulations for the government of the alms-house ; (2 *R. L.* 440 ;) and in page 12 of the corporation laws will be found an ordinance, that no person shall be admitted into the alms-house, unless previously examined by a commissioner ; in conformity to which regulation, the pauper was examined and admitted.   The general law as to special orders for support of a pauper, and the entries in relation to the same, are wholly inapplicable to a county poor-house establishment.

The expenditures for the support and maintenance of the pauper, which the jury have found to be necessary and reasonable, were as obligatory on the defendants without as with an order from a justice. (1 *Johns. R.* 491.  1 *H. Black.* 253.) The bond was given to indemnify the city against the maintenance and support of the passengers brought over by the defendant.   If any one of them becomes chargeable *in fact,* whether *declared* chargeable by an order or not, the bond is forfeited.   Where a bond of indemnity is given, it will be liberally construed, and complete indemnity awarded. (4 *Cowen,* 342.)   The provisions of the general law, relative to orders for support, have no application to suits on indemnity bonds. The cases cited from 5 *Cowen,* 644, 654, only shew that an action cannot be maintained against an overseer of the poor on an implied promise.   Sarah Green was a pauper, although she partially earned her subsistence. (2 *Cowen,* 492.)   The defendants have no right to complain that the question was submitted to a jury of twelve men, to determine whether the pauper was in such indigent circumstances as to require relief, instead of being concluded by the determination of the commissioners.   The question of damages was fairly submitted to the judge.   [The counsel was about to discuss the question as to the constitutionality of the law, authorizing bonds of indemnity to be exacted in those cases, but was stopped by the court.]

ALBANY,
Oct. 1828.

Candler
*ads.*
Mayor, &c. of
New-York.

*By the Court,* SAVAGE, Ch. J. The first question arising in this case is, whether the bond on which this suit is brought is valid ? The condition of the bond is, that the defendant shall indemnify and save harmless the mayor, aldermen and commonalty of the city of New-York, from all expenses and charges which may be incurred for the maintenance and support of certain persons imported by him, and, among them, Sarah Green. This bond was taken under the authority conferred by the 252d section of the law relating to the city of New-York.

It is contended, by the counsel for the defendant, that the statute in this particular is inoperative, as being repugnant to the constitution of the United States ; and it is supposed that the principles established in the case of *Gibbons* v. *Ogden,* (9 *Wheaton,* 1,) determine this point. If I understand that case correctly, it decides that commerce, as well foreign as among the states, is subject to the control of congress ; and that any laws of the states, repugnant to those of the United States, are void, being unauthorized by the constitution of the United States ; but that the laws of the states, which do not imply an exercise of the power to regulate commerce, are valid. Some of these acts, it is conceded, may have an important bearing upon commerce generally. Such are the laws relating to the inspection of articles of produce intended for exportation ; laws respecting the preservation of health ; quarantine laws ; and laws regulating pilotage of vessels. All these subjects, as well as those which concern the internal policy of the state, are admitted to be within the jurisdiction of state legislation. The right of excluding paupers, and compelling those who bring foreigners among us to indemnify the state against their support, concerns the police of the state, and is one which does not belong to congress by any express power, nor is it incidental to any express power. It is not perceived how it is contained in the power to regulate commerce ; nor does it interfere with commercial transactions, any more than quarantine and inspection laws. The bond is therefore valid.

The only remaining question in the cause is, whether an order of a justice was necessary. There are many cases

in our own reports, where such order is held to be necessary, and such is the language of the statute; but it will be found, that the cases in which such order is necessary, are cases involving the responsibility of the overseers of the poor.

There is also one case, at least, in which such order is decided to be unnecessary, and that is the case of an indemnity bond—a case in which it was shewn, that the expenses were incurred necessarily by the overseers; and this court held, (1 *Johns. R.* 491,) that such expenditures were as obligatory on the defendant without as with an order from a justice. From what has been adjudged, it seems to me the distinction is this: You cannot compel the overseers to afford relief without an order; but if they do it in a proper case, without such order, and have a bond of indemnity, they are equally entitled to the remedy upon the bond, whether they had a previous order or not. But where the overseers improperly paid money, and endeavored to enforce indemnification from the county, an order of two justices was held to be necessary. (4 *Cowen*, 137.) But this case seems to be distinguishable from most others. The alms-house establishment in the city of New-York is a county concern. No questions can arise between the wards, or between ward and county. The commissioners perform the duties of both overseers and justices, and there seems to be no use in one commissioner making an order upon himself to provide for a pauper. The idea of weekly or other allowance, short of absolute support, is not applicable to such a case. The pauper is taken to the alms-house, where every provision is made. The object of orders is, to enable the towns and counties to settle the accounts correctly with the overseers; that those who have the disbursement of the public money may not embezzle or improperly use it; but no check of that kind can be used in the alms-house, where the city provides all necessaries by their superintendant, who is under the control of the commissioners, and whose expenditures are all regulated by them.

The fact of the pauper's being received in such a case by one of the commissioners, seems to be equivalent to a justice's order in a case where such order is proper. In both ca-

ses, it is the act of the officer, who is to judge of the necessity of making provision for the pauper.

As to the measure of damages : the rule adopted by estimating the whole expenses of the establishment, and making an average upon its inmates, cannot be correct. The question should be, what was it reasonably worth to support the pauper? But as it appears that the recovery is much less than what was shewn to be the value of the pauper's support, deducting her services, I see no necessity for a new trial.