W. S. Cassedy et al. v. Moses Jackson et al., Adm'rs.

1. Administratrix marrying — order requiring her to join her husband in a new bond does not vitiate her original appointment. —Where an administratrix married and the probate court passed an order requiring her husband and herself to execute a new bond, the error of the court, in requiring her to join in the bond, did not affect her rights as administratrix, by virtue of her original appointment, nor deprive her of authority, in conjunction with her husband, to prosecute a suit on a cause of action due to her intestate.

2. Practice — error to try issue of fact with demurrer undisposed of. — It is error to proceed to the trial of issues of fact without making disposition of a demurrer.

3. Maintenance — art. 1, p. 306, Code of 1857 — disseizee may convey any interest in or claim to land. — The common law as to the effect of adverse possession upon conveyance of real estate is not in force in this state. Art. 1, p. 306, Rev. Code of 1857, changes the rule of the common law upon this subject, and removes all restraints upon the alienation and transfer of real estate, so as to enable any one, having an interest in or claim to land, to convey the same, notwithstanding the land may be in the adverse possession of a third person claiming it under a color of title.

Error to the circuit court of Franklin county. Smiley, J.

The features of this case, as discussed and decided, are distinctly exhibited by the opinion of the court, which pre-

sents to view so much of the facts of the case as to enable the reader to perceive the principles decided.

*Geo. L. Potter* and *H. Cassedy,* for plaintiffs in error.

*J. F. Sessions* and *E. Safford,* for defendants in error.

PEYTON, C. J. :

Rebecca D. Van Allen, administratrix of the estate of Stephen Van Allen, deceased, instituted suit at the June term, 1866, of the circuit court of Franklin county, against W. S. Cassedy and H. Cassedy, on a promissory note made by them in favor of said decedent for the sum of $1,674 83, dated August 25, 1860, and due at that time.

To this action the defendants appeared and pleaded the general issue, *non assumpsit,* and appended thereto a notice of various matters of defense to be given in evidence under this plea on the trial of the cause, and also two special pleas, substantially as follows : The first alleges that the note sued was given in consideration of the sale of a pretended title to certain lands therein described, by the plaintiff's intestate to the said W. S. Cassedy, which were, at the time of the sale and execution of the deed of conveyance, in the adverse possession of one John Sample, who, before that time, then and ever since, held the said lands under claim and color of title, adverse to that of the grantor, and that, therefore, the said sale and conveyance were illegal and void, and furnished no valid consideration for the note sued on in this action. The second alleges that the note sued on was given in consideration of a deed of certain lands with a covenant of seizin therein, executed by the plaintiff's intestate to the said W. S. Cassedy, and that, at the time of the execution and delivery of said deed of conveyance, the said lands were in the adverse possession of John Sample, under claim and color of title adverse to that of the grantor, and that, therefore, the covenant was broken at the time of the execution of the deed, and that the consideration of the note has wholly failed.

To the first special plea the plaintiff demurred, for the following causes : 1st. That the said plea does not allege that the adverse possession therein set forth was known to the grantor at the time of executing the deed ; 2d. That the matters of said plea do not show a breach of the covenants contained in the deed ; 3d. That the adverse possession of Sample does not make the deed void as between the said grantor and grantee.

And to the second special plea the plaintiff replies, and in her replication denies all and singular the allegations and matters therein alleged.

The plaintiff's demurrer to the first special plea was sustained by the court on the ground that the plea does not allege that the adverse possession therein set forth was known to the grantor at the time of executing the deed, and leave was granted to the defendants to file additional pleas.

The defendants then filed three additional special pleas in bar, which, though differing in phraseology, are substantially the same as the first of the above stated special pleas, with the exception that the first two of these pleas contain the additional allegation that the grantor, at the time he executed and delivered the deed of conveyance, knew of the adverse possession of the lands specified in the deed, by John Sample.   These pleas were demurred to by the plaintiff, and the record shows no disposition of these demurrers.

At the September term, 1868, of said circuit court, the defendants, by leave of the court, filed an additional plea, denying the authority of the plaintiff as administratrix, as stated in the declaration, to prosecute the suit, and allege that, although the probate court of said county at the October term thereof, 1866, appointed the plaintiff and her husband, Moses Jackson, administrators of the estate of said Van Allen, deceased, and they gave bond in accordance with the statute, and letters of administration were granted them, yet neither the bond nor letters of administration had the revenue stamp affixed as required by the acts of congress, and the defendants aver that the estate of said Van

Allen, at the date of their appointment as aforesaid, exceeded in value the sum of $1,000, and that therefore their letters of administration were void, and gave neither the said R. E. Jackson nor the said Moses Jackson any right to prosecute this suit. To this plea the plaintiff demurred, and the demurrer was overruled by the court, and leave given the plaintiffs to reply to said plea, and in their replication deny that they were appointed administrators as set forth in the plea, but aver that at the May term, 1862, of said probate court, and before the commencement of this suit, the said Rebecca E. was by the said probate court appointed sole administratrix of said estate, and had acted as such ever since. The defendants filed a demurrer to this replication, which was overruled by the court; and the defendants, in their rejoinder to this replication, re-assert that the plaintiffs were appointed administrators of the estate of said Van Allen, deceased, as stated in their plea; but they admit that the said Rebecca E. was, at the May term, 1862, of said probate court, and before the commencement of this suit, appointed by said court sole administratrix of said estate, but they deny that, ever since that time, she has been, and still is, by virtue of that appointment, administratrix of said estate. The plaintiffs in their surrejoinder to the foregoing rejoinder deny the grant of administration to them at the October term of the probate court of Franklin county, 1866, as alleged by said defendants. Whereupon the cause was submitted to a jury, who found a verdict for the plaintiffs for the sum of $3,081 85. The defendants moved for a new trial, which was refused by the court, and judgment rendered upon the verdict against the defendants, who remove the cause to this court, and make various assignments of error, of which we deem it unnecessary to notice more than the first, second and fourth, which are as follows : 1st. The said circuit court erred in sustaining the demurrer to their first special plea, and in not extending the same to the declaration ; 2d. It was error to proceed to trial without disposal of the several demurrers to their said first, second and third

amended pleas; 4th. The said court erred in overruling their motion for a new trial.

The defendants admit, in their rejoinder, that the plaintiff, Rebecca E. Van Allen, was appointed before the commencement of this suit, by the probate court of Franklin county, at the May term, 1862, administratrix of the estate of Stephen Van Allen, deceased. An entry of the said probate court at the October term, 1866, recites that Moses Jackson, having intermarried with Rebecca E. Van Allen, the administratrix of the estate. of the said Stephen Van Allen, deceased, since her qualification as such administratrix, it is, therefore, ordered that the said Moses Jackson and Rebecca E. Jackson execute a new bond, according to the statute. This was evidently intended by the probate court as a compliance with the statute, which provides that, if any administratix shall marry, her husband shall give bond as in case of the marriage of an executrix. Rev. Code, 440, art. 67. It was necessary that her husband should give the bond in order to prevent his wife from being removed from the administration, and the error of the court in requiring her to join in the bond does not affect her rights as administratrix, nor deprive her of authority, in conjunction with her husband, to prosecute this suit.

The correct practice requires that issues of law should be disposed of by the court before proceeding to the trial of issues of fact by the jury; and it has been repeatedly held to be error to proceed to the trial of the issues to the country without making any disposition of the demurrers. Harper v. Bondurant, 7 Smedes & Marsh. 397; Mayfield v. Barnard, 43 Miss. 271. The second assignment of error is well taken.

We will now proceed to the solution of the important question presented by the first assignment of error, as to the effect of adverse possession upon the deed of conveyance in the case under consideration; and it may be observed that, as we have no statute against maintenance and

champerty, the decision of this question must depend upon the doctrine of the common law as adopted in this state. And this law, so far as it is applicable to our institutions, situation and government, has been recognized and adopted as a part of our system of jurisprudence. It was a principle conformable to the whole genius and policy of the common law, that the grantor, in a conveyance of land, unless in the case of a mere release to the party in possession, should have in him, at the time, a right of possession; for the original simplicity of that law admitted of no estate in lands which was not clothed with the immediate seizin and possession thereof. The ancient common-law mode of conveying lands was by livery of seizin, which necessarily excludes the idea of the sale of lands by one not in possession. A feoffment was void without livery of seizin, and, without possession, a man could not make livery of seizin. This principle is not peculiar to the English law. It was a fundamental doctrine of the law of feuds on the continent of Europe. It seems to be the general sense and usage of mankind, that the transfer of real property should not be valid, unless the grantor has the capacity as well as the intention to deliver possession, which is an essential part of title and dominion over property. 2 Black. Com. 311; 4 Kent, 447.

Lord Coke says, "That for avoiding maintenance, suppression of right and stirring up of suits, nothing in action, entry or re-entry can be granted over; for so, under color thereof, pretended titles might be granted to great men, whereby rights might be trodden down, and the weak oppressed." Co. Litt. 214 *a.* This doctrine was founded upon a state of society which does not exist in this country; and so far as it relates to choses in action, exists now merely in name.

It was enacted by 32 Henry VIII, ch. 9, "That no person shall bargain or sell, or by any means obtain any pretended rights or titles, or take, promise, grant, or covenant to have any right or title to any hereditaments, unless the

seller, his ancestors, or they from whom he claims, have been in possession of the same, or the reversion or remainder thereof, or taken the rents or profits thereof, for one whole year next before the bargain and sale, on pain that such seller shall forfeit the whole value of the hereditaments sold ; and the buyer or taker, knowing the same, shall forfeit the value of the hereditaments so by him bought or taken, one-half of the said forfeiture to be to the king, and the other to him who will sue for the same."

In the construction of this statute, it has been held that, in an action against the buyer of a pretended title, it must expressly appear that the defendant knew that the seller had not been a year in possession.   6 Bac. Abr. 416.

This statute, which has been re-enacted, substantially, in most of the states and adopted as the common law of others, was not passed for the purpose of making void sales of land where the land was held adversely to the vendor, but to punish the parties concerned in it ; the penalty being the whole value of the land.   In a decision upon this statute, Montague, C. J., says : "In this point the statute has not altered the common law ; for the common law before the statute was, that he who was out of possession ought not to bargain, grant or let his title ; and, if he had done so, it should have been void ; and then the statute was made in affirmance of the common law, and not in alteration of it ; and all that the statute has done is, it has added a greater penalty to that which was void by the common law before." Patridge v. Strange, 1 Plow. 880 ; Dexter v. Nelson, 6 Ala. 68.

It has been often decided, and we think correctly, that if a person sell land, held at the time adversely by another, the sale is not a valid consideration for the promise to pay the purchase-money, the sale being a species of maintenance, and void on general principles of law and public policy. Whitaker v. Cone, 2 Johns. Cas. ; Marten v. Pace, 6 Blackf. 100 ; Williams v. Jackson, 5 Johns. 489 ; Gibson v. Shearer, 1 Murph. 114 ; Bledsoe v. Little, 4 How. 13, 24.

It is insisted by the defendants in error that a conveyance of land in the adverse possession of another is not void, unless the grantor had knowledge of that fact at the time of the conveyance, and they rely in support of that view of the law upon the case of Sessions v. Reynolds, 7 Smedes & Marsh. 161. In that case the court say: "In order to avoid the contract, the common-law offense of champerty must be complete. To constitute champerty it is necessary," say the court, "to prove something more than that part of the land was claimed by another. The purchaser should have some knowledge of the adverse claim." There is nothing said in that case as to the necessity of knowledge, on the part of the grantor, of the fact of adverse possession in order to invalidate his conveyance. Even if knowledge of the adverse possession by the grantor was necessary to render the conveyance void, the legal intendment is, that he knew the condition of his real property. Where only part of the land conveyed is held adversely, the conveyance is not void. The adverse possession to have this effect must be an actual, continued, visible, notorious, distinct and hostile possession of the whole tract of land included in the conveyance. The inefficacy of such a conveyance, it is believed, depends less upon the criminal nature of the transaction as champertous, than upon the violation of the principle of the common law, which prohibits the assignment of a right of entry into lands held adversely.

In the state of New York, under a statute similar to that of the 32d Henry VIII, it was held, that if a person out of possession conveys to a stranger land held adversely by another, the conveyance is void, so that the stranger cannot maintain an action upon it; and it is not material as to the operation of the deed, that the knowledge of the adverse possession should be brought home to the parties, though it might be material if either of them were prosecuted for the penalty given by the statute against selling pretended titles. Lathrop v. Demont, 9 Johns. 55. And in Slywright v. Page, it was considered that the deed might be void and

yet the party not liable to the penalty under the statute.  1 Leonard, 166.  It is very evident that this distinction could not exist, if knowledge of the adverse possession by the grantor were necessary to render his conveyance void.

In an action of debt for the penalty under the above-mentioned statute of New York, it was held, that the statute intended to punish persons for selling pretended rights to land for the purpose of maintenance ; and when it is evident that intention did not exist, there can be no offense.  A contrary argument may be derived from the statute, which subjects the buyer to the same penalty as the seller, if he knew the sale to have been made against the provisions of the act, indicating that, if the purchaser did not know it, he should not incur the penalty ; and, as the statute is silent as to the knowledge or ignorance of the seller, it may be inferred that the legislature intended to punish him, without regard to that fact, on the ground that he is chargeable with the knowledge of the state and circumstances of his own lands.  It would be the legal intendment, undoubtedly, that every man knew the situation of his real property. But if he could show that he did not know it, it would be very unreasonable to subject him to a penalty for an offense perfectly unintentional.  The deed, under such circumstances, would be void and inoperative, and there is no good reason why an innocent person, unconscious of offense, should be punished beyond that.  Kassenfrats v. Kelly, 13 Johns. 466.  And with regard to the vendor's knowledge of the condition of his property, it has been repeatedly decided, that a person who sells and conveys land without the knowledge that there is a subsisting, adverse possession, is not liable to the penalty of the statute for selling a pretended title, but the seller of the land is, in the first instance, to be presumed to be cognizant of the situation of it. 2 Caines, 183 ; 2 Johns. Cas. 59 ; 7 Johns. 251 ; 8 ib. 227 ; Lane v. Shears, 1 Wend. 493 ; Etheridge v. Cromwell, 8 ib. 629.

The English statute of the 32 Henry VIII, ch. 9, though

never re-enacted in Massachusetts as in New York, has been adopted in that commonwealth in practice, and must, therefore, be considered as a part of the common law there. The conveyance of a disseizee is unlawful and void, and the title to the land remained in him, and did not pass by the conveyance, unless by way of estoppel as between the parties to the deed. The grantee can never set up the deed as evidence of a conveyance to him. If it operates at all, it can only be by way of estoppel against the grantor. If he should have to bring suit in his own name against the tenant holding adversely, the deed will be inoperative. Any after deed from the grantor to any other person, after he shall have obtained possession, will convey his title, notwithstanding this conveyance. Brinley v. Whiting, 5 Pick. 348.

When it is said that the deed is valid as between the grantor and grantee, though void as to the adverse holder, it must mean that the deed would inure in favor of the grantor by way of estoppel only. Kent says: "As the conveyance in such a case is a mere nullity, and has no operation, the title continues in the grantor so as to enable him to maintain an ejectment upon it; and the void deed cannot be set up by a third person to the prejudice of his title. But, as between the parties to the deed, it might operate by way of estoppel, and bar the grantor." 4 Kent's Com. 448.

The doctrine generally held upon the subject is simply in accordance with the civil law, which "forbids a thing that is litigious to be alienated." And the well-settled rule is, that, where an attempt is made to convey land which is held adversely to the grantor, the title to the land is not affected by the transaction. Barry v. Adams, 3 Allen, 493; Loud v. Darling, 7 ib. 206; Kincaid v. Meadows, 3 Head, 192; Dabb v. Baird, 3 Call, 475; Meredith v. Kennedy, 6 Litt. 522; Shortall v. Hinckley, 31 Ill. 219. Of course, a conveyance of land by the owner, while a willful trespasser is in possession of it, is valid. Bowie v. Brahe, 3 Duer, 35.

An adverse possession will not affect conveyances made by the state, or sales made under a judicial decree, or by a public officer acting in that capacity. Hanna v. Renfroe, 32 Miss. 132 ; Jarrett v. Tomlinson, 3 Watts and Serg. 114 ; Hoyt v. Thompson, 5 N. Y. 320. Nor will it affect wills as not being within the prohibition of the rule of the common law against the assignment of a mere right of entry into land held adversely. Clay v. Wyatt, 6 J. J. Marsh. 583 ; May v. Slaughter, 3 A. K. Marsh. 505, 509.

This is the common law as to the effect of adverse possession upon conveyances of real estate. But it has been the policy of modern times to remove all restraints from the free alienation of property. And in pursuance of that policy the statute of 1857 provides that any interest in, or claim to, real estate may be disposed of by deed or will, and livery of seizin shall not be necessary. Rev. Code, 306, art. 1. This changes the rule of the common law above discussed upon this subject, and removes all restraints upon the alienation and transfer of real estate, so as to enable any one having an interest in or claim to land, to convey the same notwithstanding the land may be in the adverse possession of a third person claiming the same under color of title.

In this state the form of conveyance is very simple. It is usually by bargain and sale, which, by operation of our statute, transfers the possession of the bargainor to the bargainee, without the necessity of livery of seizin or reference to the statute of uses. We have no law here against champerty or maintenance, which, as has been seen, prohibited a right of action from being assigned or purchased. But, as has already been observed, the reason of the ancient common-law doctrine does not exist here, nor does the common rule upon this subject exist in England. There the rights of entry were made alienable by deed, by the statutes of the 8 and 9 Victoria, ch. 106. Here, where the execution and delivery of a deed consummates a conveyance, without livery of seizin on the one hand, or entry on the other, there

is no good reason why a conveyance of land to which the grantor has a good legal claim should not be valid.

On the whole, then, we think we are safe in concluding that a conveyance by a person who has a legal claim to land, held adversely by another, is valid. The ancient idea that litigation is thereby encouraged is utterly without foundation. An action by the vendee would do no more harm than an action by the vendor.

For the second and fourth errors assigned the judgment will be reversed and the cause remanded.