## GEORGIA HOME INSURANCE COMPANY v. WM. H. JONES.

1. INSURANCE—INTEREST IN PROPERTY INSURED.—The appellee effected insurance by policy against loss by fire, in the company of appellant for $2000, on a gin house, (leased by him), gin gearing, cotton press, and on cotton, ginned or not ginned, under the following circumstances : P. leased the plantation to O., who sub-let one hundred acres to appellee, Jones, with gin house, press, etc. O. gave an agricultural lien on same to M. & Co., and a concurrent lien to R. The facts show that Jones had an absolute interest in three-fourths of eighteen thousand pounds of seed cotton. and actual ownership of two bales of cotton, a cotton press which he had built, a gin house which he had repaired, estimated in the aggregate to be worth $3600. Held that Jones had an insurable interest to that amount in the property embraced in the policy, which O. could in no way encumber.

2. PLEA WITHOUT REPLICATION—DEMURRER NOT DISPOSED OF.—The defendant in the court below filed the usual plea of *non-assumpsit*, involving the whole merits of the controversy, and the cause was tried upon every question to which the action could give rise. The special plea presented no new issue, or new matter not raised by the general issue. To the first special plea there was a demurrer, and the inference is that this plea and demurrer were disposed of. A second special plea was filed, and from the time it was filed until the case reached this court, no reference was made to them. They in no way involved the merits of the case, and they must be taken and held to have been waived.

Error to the circuit court of Warren county. Hon. GEO. F. BROWN, Judge.

The facts of the case are very fully stated in the opinion of the court.

*E. J. & Owen McGarr*, for plaintiff in error.

We submit that the court below erred both in the finding of the facts, and in its conclusions of the law upon the facts established.

The evidence shows that at the time the insurance was effected Jones was a sub-lessee of a part of the "Rose place," from Oslin, the lessee of Powell; that, at the time this insurance policy was underwritten, the lease to Oslin had but two years and one and a half months to run, and that, too, subject to the important consideration that the rent reserved should be paid on the 31st of December of each year; and, in the event of a failure to pay at the day, the lessee, Oslin, surrendered and forfeited his lease. That the sub-lease to Jones had the same time to run, and was coupled with conditions, that were never even partially performed.

We contend that Jones' sub-lease from Oslin made him in effect a tenant at will; for any forfeiture, surrender, or other termination of the lease, as between Powell, the owner, and Oslin, necessarily terminates Jones' derivative lease. Yet Jones, when he applied for the insurance, stated to the agent of the company that he had a four years' lease from the owner.

Here, then, was a misrepresentation of two important facts, viz.: the duration of the lease, and the person from

whom he (Jones) leased, when the truth was, that he had but little over two years. The materiality of the misrepresentation made by Jones to the agent, we think, is obvious, and the concealment of the real state of affairs respecting the sub-lease, even if unintentional, presented the risk in a very different light than that in which it would have appeared had the facts been disclosed to the company's agent, as they actually existed at the time of the insurance. It was, therefore, such a misrepresentation as must avoid the policy. Flanders on Fire Insurance, 326, 327; Columbia Ins. Co. v. Lawrance, 10 Pet. U. S., 507. Jones' lease was subject to be determined in six weeks, that is, at the end of the year 1870, with the further infirmity in the lease that Oslin sub-leased to Jones, upon certain conditions (he paying rent), which he specified to perform, viz.: to put the one thousand acres in cultivation, to build fences, etc. Jones admits that he performed no part of the conditions.

At the time of the loss, there was an entire want of interest in the property destroyed, so far as interest depended upon the leases; for the reason that the lease granted by Powell to Oslin was determined on the 8th of January, if not before, by the voluntary act of Oslin in abandoning the place, and his forfeiture for non-payment of rent, nearly a month before the fire occurred, and the derivative lease of Jones then ended. The declaration does not allege that Jones had any interest in the property at the time of the fire. 2 Atkyns, 534; Flanders, 341.

$1200 of the $2000 insurance, was on the gin house, and for that portion Jones had no claim on the company. Kutler v. Smith, 2 Wallace, 491.

As to the gin stand and press, we contend that, as they were put up on the place and were attached to the land, Jones had no right, in the absence of an agreement, to remove them, after the expiration of his sub-lease. The law in relation to fixtures would give the owner of the freehold a right to hold them as a part of the freehold. Richardson v. Borden, 42 Miss., 71.

Jones states that two bales of the cotton belonged to him, and that in the residue he had a half interest, but that, owing to the state of his accounts with Oslin, he considered that he had an interest equal to three-fourths of the ten bales, and no settlement had been made between them.

The defendant in error introduced no testimony to show the value of any property destroyed, or the actual loss to him in consequence of the fire, except his own statement. He says the "gin house, and fixtures therewith, was worth to me $1000." This is no criterion of the real value of the property. The actual value is what should be ascertained, and that should guide the jury and the court in assessing the damages. The value of the whole property destroyed, ex-cept the cotton, is based on the supposition that he had, at the time of the fire, two or three years unexpired lease, when, in law and in fact, his sub-lease had terminated.

Again, the record shows that there was no replication by plaintiff to the pleas of defendant; there was no issue joined. Steele v. Palmer, 41 Miss., p. 88; Hogan v. Lewellen, 42 Miss., 302; Armstrong v. Barlow, 42 Miss., 506.

In this case there was not only a plea of the general issue, but special pleas in bar, unanswered when the cause was tried.

*Geo. L. Potter*, on the same side, filed an elaborate brief.

*Upton M. Young*, for defendant in error.

It is clear, from the evidence, that at the date of insurance, and at the time of the loss, Jones had an insurable interest in the property covered by the policy. He had repaired the gin house, worth $1600; built the press, worth $400; bought the gin stand from Oslin for $180; stand and fixtures worth $1000; he owned absolutely two bales of cotton, worth $150, and three-fourths of all the cotton destroyed. Eighteen thousand pounds belonged to him; his contract with Oslin was for one-fourth of the crop; the hands were to have one-half. They owed to Jones on that half nearly $2000, for supplies furnished by him individually. So it will be seen

that the property destroyed far exceeded, in value, the respective amounts for which it was insured, and that the aggregate loss occasioned by the fire, was, in point of fact, between three and four, instead of two, thousand dollars. Jones was, during all the time from January, 1870, working under this contract, oral or written, with Oslin, and was openly and notoriously in possession of the property insured. The deed of trust of Oslin, for McCutchen & Co., was acknowledged November 21st, 1870, and filed for record November 29th, 1870. The policy in favor of McCutchen *et al.*, was obtained 21st November, 1870. The inference is fair that McCutchen *et al.*, or Oslin, or all, were endeavoring, late in the year 1870, to defraud (by recording, at a strange and suspicious day, liens pretending to bear date as far back as January,) Jones, or the laborers whom he supplied. From this corollary, we conclude that, at the date of Jones' policy, and prior to that time, he had a direct and positive interest in the property insured; an interest vested in him by Oslin; an interest acquired by purchase and labor, made and bestowed, in pursuance of his contract with Oslin, in January, 1870, over which interest in said property, he exercised ownership, actual possession and control, and that Oslin, McCutchen, Folkes & Co. and Powell, had actual notice of Jones' interest before he had any notice, actual or constructive, of the several liens, finally recorded by these parties. It follows, therefore, that on the 1st day of December, 1870, Jones' interest was clearly an insurable one; and, as the testimony shows, that there was no fraud on his part, in obtaining the policy, he ought to recover. See 42 Miss., 447; 43 Miss., 456.

Having reviewed this case to ascertain the precise character of client's interest in the property destroyed, we will now examine what is necessary to constitute, in legal parlance, *insurable interest.* The quantity and quality of interest necessary to secure a valid policy is not great. The insured must, of course, have an interest of some kind, and which, if the loss or damage by fire—the event insured against

in this case—should transpire, *might bring upon the insured a pecuniary loss.*    Carter v. Humboldt Ins. Co., 12 Iowa, 287.

It is sufficient to affirm that "the interest must be a direct one in reference to perils insured against.    Phil. on Ins., vol. 1, p. 107.    It has been repeatedly held that a conditional interest is a sufficient subject for insurance, ib., p. 180.    So a valid executory contract, for a thing, ib., 100.    So the benefits arising from business, or from commercial transaction.    A bailee has an insurable interest in property in his custody, as to what constitutes an insurable interest.    See Tyler v. Ætna, Ins. Co. 16 Wend., N. Y., 238.

A mortgagee has an insurable interest.    Keller v. Merchants' Ins. Co., 7 La. An., 29 ; Addison v. Louisville Ins. Co., 7 B. Monroe, 470.

A lien on a house for work or materials constitutes an insurable interest.    Franklin Fire ins. Co. v. Coats, 14 Md., 285.    So is a mechanic's lien.    Stout v. City Fire Ins. Co., N. H., 12 Iowa, 371 ; ib, 284.

Jones had an additional interest, a mechanic's lien on the gin house, gin and gearing, press and fixtures.    Rev. Code, 1871, § 1603.

A failure to deliver did not work a forfeiture—though it might have been a breach of the contract, or covenant, if a demand had been made.    The possession of the plantation by Powell, was a forcible one.    He was a trespasser.    Oslin was in possession of the "Rose plantation," through his agent, on the 8th day of January, 1871, and Jones was occupying the premises openly and notoriously, under his lease from Oslin, and these facts were known to Powell and McCutchen. There was no forfeiture of Jones' lease which was to terminate in January, 1873.    Titles by forfeiture are disfavored both at law and in equity, 2 Story, Eq. Jur., sec. 1314, 1315, 1316.    Conditions tending to destroy estates are construed with great rigor to prevent forfeiture.    2 Cruise Dig., ch. 2, p. 27 ; 15 Johnson's Rep., 278.

Jones made no misrepresentation of facts material to the

risk. Even if he had, the policy would be regarded as good, until avoided by due proof of facts. Carpenter v. Prov. Washington Ins. Co., 16 Peters, 495.

In perfect good faith he stated, and the policy shows on its face that he stated, that he was on *leased premises.* He insured the property greatly under its value, and paid the premium. This last circumstance was agreeable to the company.

Refusing a new trial was no error. Kelly *et. al.* v. Miller, 39 Miss., p. 17; Swann v. West, 41 Miss., 104; Turner v. Bird, 44 Miss., 449. Head v. The State, ib., 731; Durah v. The State, ib., 789; N. O., J. & G. N. R. R. v. Field. 46 Miss., 573; Gamblin v. The State, 45 Miss., 658.

TARBELL, J., delivered the opinion of the court:

The statement of this case conducts to its certain solution. By policy No. 27, dated December 1st, 1870, W. H. Jones was insured against loss, by fire, in the Georgia Home Insurance Company, in the sum of $2000, as follows: "$1200 on a gin house leased by him; $200 on the gin and gearing therein; $400 on cotton, ginned and unginned, packed and unpacked therein, and $200 on the cotton press contiguous thereto." This policy, by its terms, was in force "from the 1st day of December, 1870, at 12 o'clock, noon, until the 1st day of March, 1871, at 12 o'clock, noon," and was "to be paid within sixty days after due proof of the amount" of loss, in case of fire. The property thus insured was totally destroyed by fire on the 6th day of February, 1871. Due proof of loss was made within a few days after the fire.

In default of payment, suit was instituted to recover the insurance, in June, 1871. The issue was tried before the circuit judge of Warren county, without a jury, which was waived by stipulation. No fault, neglect or omission was imputed to the plaintiff, but a defense was predicated upon the following facts: J. R. Powell, of Alabama, being the owner of three plantations in Washington county, Miss., leased the same to James M. Oslin, in 1870, for three years,

" together with all and singular the appurtenances thereto pertaining." In consideration of this lease, Oslin " covenants and agrees " to pay the sum of $10,000, yearly, upon the last day of each year, and, should he fail to pay the rent thus stipulated, " said lessee consents to a forfeiture of the remainder of his term, and agrees to deliver to said lessor possession of said leased premises upon his demand of the same."

By an oral agreement in January, reduced to writing November 15th, 1870, Oslin sub-let one hundred acres on the " Rose place," to W. H. Jones, free of rent on condition of putting the same under fence. Jones was " to have the use of the gin upon said tract of land," and timber for building and fencing.

On the 17th day of January, 1870, Oslin gave an agricultural lien upon the crops grown on the above plantation, to McCutchen & Co., and on the same day a concurrent lien to Richardson & May. These liens included " one gin stand, in the gin house on the "Rose plantation." Under date of November 21st, 1870, a deed of trust was executed by Oslin further to secure McCutchen & Co., and others, for advances and supplies, embracing crops, stock, farming implements, and also " gin stand and band in gin house on the "Rose place," and running gear and cotton press on the "Rose place."

By policy No. 3119, the Planters Insurance Company insured Oslin in the sum of $2400, as follows: " $600 on his gin stand, cotton press, running gear and gin band, and $1800 on thirty bales of cotton in seed, lint, or bales, all contained in his horse-power gin house, occupied by the assured, and situated on the "Rose plantation," in Washington county, Miss., for three months, commencing at noon on the 21st day of February, 1871." Loss by this policy was payable to McCutchen & Co.

Jones was examined as a witness, and testified, that the fire occurred during his absence in Vicksburg, from whence he returned after the fire: " The gin house and contents, including the gin stand and gearing, and about eighteen thou-

sand pounds of seed cotton, also the cotton press, were burned on February 6th, 1870. *The press was built by me,* and was worth to me, at the time of the loss, from $300 to $400. The cotton stored in the gin was worth, ginned, baled, and in market, from $60 to $75 per bale. I bought the gin stand from Oslin, and paid him for it. The castings I bought at different places. The gin stand, and fixtures connected and used therewith, were worth to me $1000. The gin house was repaired by me at great expense, and was worth to me $1600. The cotton in the gin was raised on the "Pluck place." There was an agreement between Oslin and myself that I should have one-half of what he received from the crop. The hands were to pay one-half of the crop to Oslin, and pay for the provisions purchased for them. The half was to be equally divided between Oslin and myself. Two bales in the gin belonged to me individually, the balance was raised on the "Pluck place." There were twelve hands on that place. I furnished all of them with provisions until August. There was due me for supplies to the hands nearly $2000. I considered my claim on the cotton in the gin house covered nearly three-fourths of that remaining after my two bales. McCutchen refused to recognize any right or claim on my part, as he said I had no contract to show. Soon after the fire, I left the place and went to Kentucky. Oslin went to Texas in November, 1870. I had an oral contract with Oslin in January, 1870, and this was reduced to writing in November after. I made all the proof to the company. Payment was never refused on any other ground than, that of my want of interest in the property destroyed." The testimony for the plaintiff here closed.

McCutchen testified for defendant, that, about January 8th, 1871, " Col. J. R. Powell and William McCutchen, of the firm of McCutchen, Folkes & Co., went up to the plantation, and Col. Powell entered upon and took possession of the three places, as for a forfeiture of the lease; Oslin having forfeited his lease by non-payment of rent for the year 1870. There was no objection made by Oslin's agent, or any one

else, to Powell's taking possession, the rent being unpaid, and McCutchen & Co. having a large claim for supplies made to Oslin. Powell and said firm made an agreement on the 9th or 10th of January, 1871, by which said firm received possession of said places and the growing crops thereon. The possession having been turned over to McCutchen, and the growing and ungathered crops sold to him by Powell, under said agreement, and he (McCutchen) thereby authorized to gather the crops then in the field, and dispose of them, Mc-Cutchen left the three places in charge of John Green, as his agent, who remained in charge until March, 1871, and had the cotton, then ungathered, picked. In March, 1871, the property embraced in the deed of trust from Oslin to McCutchen & Co. was sold, except that destroyed by fire." This closed the testimony for the defendant.

The circuit Judge found generally for the plaintiff, but by request, he stated his conclusions of fact separately from the conclusions of law, as follows : "The plaintiff rented of Oslin the 'Rose plantation,' in Washington county, taking possession January 1, 1870, but the contract was not reduced to writing until November 15th ; Jones supposed Oslin to be the owner of the place ; having put up a cotton press, repaired the gin house, put in a gin and gearing to run the same, for his benefit as lessee. Jones applied to defendant for a policy of insurance, on his interest in the property thus enumerated ; the policy was issued December 1, 1870, for three months for $2000 ; the property insured included twelve bales of cotton unginned ; all burned February 6, 1871 ; in November, 1870, Oslin effected an insurance with the Planters' Ins. Co. on this same property, with other property, for the benefit of Mc-Cutchen & Co. ; there was also an agricultural lien and subsequently a mortgage, covering, as was claimed, Jones' improvements and interest in the crops he made, and a short time before the fire, it appears that Oslin surrendered his interest in the 'Rose plantation,' and McCutchen & Co. became his successors under Col. Powell, the owner, and claimed

the right to recover from the Planters' Ins. Co. for the property burned, claimed by Jones, the plaintiff."

The following are the conclusions of law of the circuit judge:

"1. That at the time the insurance was effected by Jones, he had an insurable interest in the property of greater vlaue than insured.

2. That no fraud being claimed by the Georgia Home Ins. Co. in obtaining the insurance by Jones, and no objection being made to the preliminary proof of the loss, Jones was entitled to recover for the amount of his loss proven as against said insurance company.

3. That Oslin could not encumber in any way Jones' interest in property acquired by agreement or lease, as sub-lessee of Oslin, and hence Oslin's chattel mortgage to Mc-Cutchen, Folks & Co. gave them no interest in Jones' property embraced in the policy in this suit.

4. Oslin, having a three years' lease of the "Rose place" at the time he sub-leased it to Jones, the latter was not necessarily evicted by Oslin surrendering his lease or selling out to McCutchen, Folkes & Co.; on the contrary, Jones, the plaintiff, being in the possession and using the same at the time the fire occurred, was entitled to recover from the Georgia Home Ins. Co. the amount of his loss of the property so insured."

Judgment followed for the full amount of the insurance.

A motion for a new trial was made on the ground that the decision was contrary to the law and the evidence. This motion was overruled, and thereupon a writ of error was prosecuted.

The following statements present, somewhat fully, all the facts of this case. The testimony and the rights of Jones are thereby isolated, and made to stand out prominently, amidst the numerous liens, mortgages, and counter claims, sought to be created by Oslin, and now interposed to defeat the action of the plantiff.

The testimony of Jones was unimpeached, and uncontradicted. He testifies to an absolute interest in three-fourths of 18,000 pounds of seed cotton in the gin house, which would be nine bales; to the actual ownership of two bales of individual cotton ; the cotton press, he says, was built by him, and was worth $300 to $400 ; the gin stand he bought of Oslin, and the castings of others, and he values the gin stand, and fixtures connected and used therewith, at $1000 ; he repaired the gin house and estimates it to be worth to him $1600 ; cotton ginned, and baled, he estimates at from $60 to $75 per bale. Thus he asserts an interest by his highest estimates of over $5000. Estimating his two individual bales at his lowest valuation $60, per bale ; his share of the unginned cotton at nine bales, worth, also, $60 per bale ; the cotton press at $350, valued by him at $300 to $400; the gin stand, which he says he bought and paid for, $1000 ; and we have an aggregate, exceeding the $1600, for repairs on the gin house of $2010.

If there was cotton in the gin house, of the share of the hands, sufficient to pay him the indebtedness of $2000, then he had an interest, still exclusive of the $1600 on the gin house of $3470. Or, to the $2010, if we add the $1600, on the gin house, he then had an interest of $3610, and this interest in the gin house, may be conceded to Jones either as an interest in its use, or by way of mechanic's lien, for the repairs, which he says he put upon it to a large amount.

In November, 1870, Oslin left for Texas and has not returned. Powell and McCutchen went to the plantation in January, 1871, and took possession without demand, and without objection from Oslin's agent; who this agent was, or whether he was present, is not stated. It does not appear whether Jones was present, or was spoken to on that occasion. Neither does it appear, that any allusion was made to, or anything done, specifically, about Jones' occupation and use of the gin, gin stand, gearing, press, and cotton in

the gin house. On the contray, the inference from the evidence, is, that he was left in the undisturbed possession and use of these articles. The arrangement between Powell and McCutchen, by which the former turned the plantation over to the latter, embraced only the care of the ungathered crops. Nothing was said about the gin, gin-stands, cotton in the gin-house, etc., and Jones' connection therewith.

It would seem that he was unmolested and wholly undisturbed in his possession and use of the property claimed, and insured by him, either by Powell and McCutchen, or by Green, who was placed in charge of the plantations and of the ungathered crops, as the agent of McCutchen. It no where appears that the connection of Jones with the property insured by him was severed or interfered with, until he voluntarily left after the fire. Indeed, according to the testimony, it is evident that Jones continued his active interest in, and oversight of, this property, until its destruction, after which he was still there guarding his interests. The material question in the case is, did Jones have an insurable interest in the property upon which he obtained a policy? The answer is furnished by the testimony of Jones himself.

In the view taken of this case, it is unnecessary to discuss rules of law which might arise under a slightly different state of facts.

What is an insurable interest? Code, 1871, § 1603; Carter, v. Home Ins. Co., 12 Iowa, 287; 1 Ph. on Ins., 107, 108; Tyler v. Ætna Ins. Co., 16 Wend., 238; 7 La. An., 29; 7 B. Mon,, 470, 14 Md., 285.

Was there a forfeiture in this case? Lynd v. Hough, 27, Barb., 415; Spear v. Fuller, 8 N. H., 174; 3 B. & A., 299; 3 Dana, 586; 3 Cush., 236; 1 Sand., 237; 2 Story Eq., Jur., § § 1314, 1315, 1316; 15 John., 278.

Error is not shown. 41 Miss., 104; 44 ib., 449; ib., 731; ib., 789; 45 ib., 558; 46 ib., 573.

Judgment affirmed.

A petition was filed for a re-argument upon the grounds stated in the following opinion of the court:

TARBELL, J., delivered the opinion of the court on re-argument:

· On petition for re-argument. The grounds of this application are these : 1. A demurrer undisposed of. 2. A special plea without a replication ; and, 3. Upon the merits.

There was the usual plea of *non-assumpsit,* which involved the whole merits of the controversy, and the cause was fully tried upon every question to which the action could give rise.

The special pleas presented us were issue, or new matter, not raised by the general issue.

To the first special plea, there was a demurrer, and the counsel for the plaintiff in error in his abstract, says, that, thereupon the second special plea was filed. The inference is, that, the first special plea and demurrer were thus disposed of. Without a replication to the second special plea, the cause proceeded to trial, verdict and judgment. There was a motion for a new trial, and a full bill of exceptions, presenting the whole case between the parties. From the time it was filed until the case reached this court, no attention was paid to the special pleas or demurrer; no reference was made to them ; they in no way involved the merits, or presented any question which was not raised and adjudicated.

The facts surrounding the technical points in this case, on which a re-argument is asked, are believed to be unlike the cases referred to by counsel in support of the petition. In the case at bar no injustice has been done ; no questions remain undisposed of ; there was no impediment to a full and perfect investigation ; from the record and the bill of exceptions, it is evident the demurrer and the special pleas were waived by mutual consent. For this reason, and because no injustice has been done, and no part of the merits admitted on the trial by reason of the demurrer undisposed of, and the want of a replication, justice does not require a re-argument, much less a reversal of the judgment.

Martin v. Tower, 43 Miss., 522, is referred to as an authority, that a judgment in a case wherein there is even a sham plea unreplied to, will be reversed, but an inspection of that case shows that it will scarcely bide such an interpretation, as it is said by the court, that "the plea was defective, but was not so utterly destitute of merit as would warrant the court in treating it as a nullity."

In Armstrong v. Barton, 42 Miss., 507, there was judgment final on demurrer to special pleas, when there was a good plea of payment not replied to, and no general issue.

Hogue v. Lewellen, 42 Miss., 302, was the case of a plea of payment, without replication, and no general issue. *Held:* A discontinuance. And such only is the case in 4 How., 352.

Bryman v. Brown, 6 How., 319, was the case of an executor pleading specially to a note, the failure of consideration and judgment without replication.

The demurrer in Cassedy v. Jackson, 45 Miss., 397, involved the merits to a large extent.

Mayfield v. Barnard, 43 Miss., 271, was disposed of finally on demurrer, with other demurrers undisposed of. *Held:* To be error.

The reasoning in Waterbury v. McMillan, 46 Miss., 635, proceeded expressly upon the theory that the demurrer undisposed of involved the merits to some extent at least.

There was no general issue in Hatch v. Roberts, 41 Miss., 92, but several special pleas, to which there was a demurrer, without disposing of which, there was a trial. *Held:* To be erroneous. The precedents do not seem to warrant the application of the rule invoked by counsel, to the extent asked upon the facts of the case at bar, where no injustice has been done, by ignoring the technical points raised for the first time in this court, and when the merits are in no way involved thereby. But., § 622, Code of 1871, is conclusive on this point.

Upon the merits, it is not considered necessary to add anything to the views expressed in the opinion affirming the judgment. Re-argument refused.