PURDOM v. STATE
2022 OK CR 31
Case Number: F-2019-854
Decided: 12/22/2022
JOSHUA LEE PURDOM, Appellant v. STATE OF OKLAHOMA, Appellee
Cite as: 2022 OK CR 31, __ __

 

SUMMARY OPINION
HUDSON, VICE PRESIDING JUDGE:
¶1 Appellant was convicted at a jury trial of Counts 1, 3 and 4: Assault and Battery With a Deadly Weapon, in violation of ; Count 2: Kidnapping, in violation of ; Count 5: Sodomy By Force or Fear, in violation of ; Count 6: Rape in the First Degree, in violation of ; and Count 7: Feloniously Pointing a Firearm, in violation of , in the District Court of Hughes County, Case No. CF-2018-93.
¶2 The jury recommended sentences of seven years imprisonment each on Counts 1, 3, 4 and 7; five years imprisonment on Count 2; twelve years imprisonment on Count 5; and eighteen years imprisonment on Count 6. The Honorable Timothy Olsen, District Judge, presided at trial and sentenced Appellant in accordance with the jury's verdicts. Judge Olsen ordered Counts 1-4 to run concurrently but consecutively with Counts 5-7, resulting in a total of forty-four (44) years imprisonment. Appellant now appeals.
¶3 This Court, in an unpublished Opinion, previously reversed and remanded the judgment and sentence in this case with instructions to dismiss based on lack of jurisdiction over Indian country crimes. See Purdom v. State, No. F-2019-854 (Okl.Cr. Sept. 23, 2021) (unpublished). In Oklahoma v. Purdom, 597 U.S. ___, 142 S. Ct. 2897 (2022), the United States Supreme Court granted the State of Oklahoma's petition for writ of certiorari, vacated the judgment of this Court and remanded this case for further consideration in light of Oklahoma v. Castro-Huerta, 597 U.S. ___, 142 S. Ct. 2486 (2022). The Supreme Court's order places this case in the position it was before the issuance of our original Opinion and we now consider all propositions of error raised by Appellant. Today's Opinion replaces our original Opinion in this matter. Upon further review, we AFFIRM the judgment and sentence of the District Court in this case.
1. Jurisdictional Challenge
¶4 On September 24, 2020, Appellant filed with this Court a Motion to Dismiss for Lack of Jurisdiction or, Alternatively, Request for an Evidentiary Hearing. Appellant asserts in the motion that the victim, M.P., is Indian; the charged crimes occurred on the Creek Reservation; and thus, under federal law, the District Court has no jurisdiction over this case. Appellant cites McGirt v. Oklahoma, 591 U.S. ___, 140 S. Ct. 2452 (2020) and 18 U.S.C. §§ 1151-1153 in support of this proposition.
¶5 In McGirt v. Oklahoma, 591 U.S. ___, 140 S. Ct. 2452 (2020), the Supreme Court held that the Creek Reservation in eastern Oklahoma was never disestablished by Congress and, thus, constitutes Indian country for purposes of federal criminal jurisdiction. An evidentiary hearing to address this matter was held on March 9, 2021. In its written findings of fact and conclusions of law, the District Court accepted and found the facts as stipulated by the parties. On these facts, the District Court concluded that the victim was Indian for purposes of federal law based on the percentage of Indian blood. The District Court further found the victim was recognized as an Indian either by the Federal Government or a tribe, that the crime happened on the Creek Reservation, and that the Creek Reservation is Indian country for purposes of federal law.
¶6 We find no abuse of discretion in the trial court's findings of fact. The record supports the finding that the victim is an Indian for purposes of federal criminal jurisdiction and that the crime occurred on the Creek Reservation which was never disestablished. McGirt, supra. However, the jurisdictional issue in this case turns on the United States Supreme Court's recent ruling in Castro-Huerta, 142 S. Ct. at 2504-05, wherein the Supreme Court held that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." Applying Castro-Huerta, Appellant's jurisdictional challenge fails. The State of Oklahoma had jurisdiction to prosecute all the charged crimes in this case.
2. Appellant's Supplemental Brief
¶7 Shortly after the Supreme Court's order sending this case back for further consideration in light of Castro-Huerta, Appellant tendered for filing a supplemental brief challenging the applicability of Castro-Huerta to this case and renewing his challenges to the District Court's jurisdiction. The State objects to Appellant's motion to file the supplemental brief. We FIND that Appellant's motion to file the supplemental brief he tendered for filing on July 19, 2022, should be GRANTED. See Ricker v. State, , ¶ 4 n.3, , 1271 n.3; Rule 3.4(F)(2), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2022). Appellant's supplemental brief is accepted for filing and the State's objection is overruled. For the reasons set forth below, the claims contained in Appellant's supplemental brief are DENIED.
¶8 First, Appellant complains there is no good cause to recall the mandate in this case. As discussed earlier, however, the Supreme Court's order granting certiorari, vacating our previous judgment and remanding the case for further consideration in light of Castro-Huerta puts us in the same position as before the issuance of our original Opinion without resort to the formality of recalling the mandate. This claim is denied.
¶9 Second, Appellant complains that state jurisdiction over this case is prohibited by Article 1, § 3 of the Oklahoma Constitution. Appellant tells us this provision was "derived from the Oklahoma Enabling Act and was a condition of statehood that disavowed state authority to prosecute crimes by or against Indians in Indian Country." The problem with this argument is that Castro-Huerta held in no uncertain terms that "neither the General Crimes Act, . . . nor Public Law 280, . . . have pre-empted Oklahoma's concurrent jurisdiction to prosecute non-Indians for crimes against Indians in Indian Country[,]" "that no principle of tribal self-government preempts the State's authority to prosecute, and that the Oklahoma Enabling Act does not preempt Oklahoma's authority to prosecute." Ricker, , ¶ 4, 519 P.3d at 1270-71.
¶10 The language in Article 1, § 3 of the Oklahoma Constitution is virtually identical to the language contained in the Oklahoma Enabling Act, § 3, cl. 3, ch. 3335, 34 Stat. 267, 270 (1906). It is also worth noting that the defendant in Castro-Huerta had, by the time of the Supreme Court proceedings, entered a plea agreement in federal court for the same conduct prosecuted in state court. See Castro-Huerta, 142 S. Ct. at 2492. This is perhaps the strongest clue yet that the Supreme Court meant what it said in Castro-Huerta, namely, that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." Id. at 2504-05. Appellant's federal conviction for at least some of the acts prosecuted in the present case, see Supp. Br. at Ex. A., in no way forecloses concurrent state criminal jurisdiction, pursuant to Castro-Huerta.
¶11 Notably, the Oklahoma Supreme Court recently held that:
Under Article 1, § 3, Oklahoma has not waived its political or police power over activities occurring in Indian country within its boundaries. Currey v. Corp. Comm'n of Okla., , ¶ 22, , 180 (internal citation omitted). Further, the portion of Article 1, § 3 regarding jurisdiction "envisions undiminished and not exclusive jurisdiction." Id. ¶ 23, 617 P.2d at 181.
Tay v. Green, , ¶ 9, , 435 (internal footnote omitted).
¶12 Tay cited to Currey which cited to Organized Village of Kake v. Egan, 369 U.S. 60 (1962), a case relied upon extensively by the Supreme Court to address the scope of the Oklahoma Enabling Act, as demonstrated in the following passage from Castro-Huerta:
This Court long ago explained that interpreting a statehood act to divest a State of jurisdiction over Indian country "wholly situated within [its] geographic boundaries" would undermine "the very nature of the equality conferred on the State by virtue of its admission into the Union. Draper [v. United States], 164 U.S. [240,] 242-43, 17 S. Ct. 107 [(1896)]. So the Court requires clear statutory language "to create an exception" to that "rule." Id., at 244, 17 S. Ct. 107. To reiterate, the Oklahoma Enabling Act contains no such clear language. Indeed, the Court has interpreted similar statutory language in other state enabling acts not to displace state jurisdiction. See id., at 243-47, 17 S. Ct. 107; Organized Village of Kake, 369 U.S. at 67-71, 82 S. Ct. 562. In Organized Village of Kake, the Court specifically addressed several state enabling acts, including the Oklahoma Enabling Act, and stated that statutory language reserving jurisdiction and control to the United States was meant to preserve federal jurisdiction to the extent that it existed before statehood, not to make federal jurisdiction exclusive. Id., at 67-70, 82 S. Ct. 562. Consistent with that precedent, today's decision recognizes that the Federal Government and the State have concurrent jurisdiction over crimes committed by non-Indians against Indians in Indian country.
Castro-Huerta, 142 S. Ct. at 2503-04.
¶13 All things considered, Appellant's supplemental claim that the Oklahoma Enabling Act affords him relief lacks merit and is denied.
¶14 Third, Appellant contends that Castro-Huerta only applies to the Cherokee Nation. This claim is frivolous. Nothing in Castro-Huerta limits the reach of that decision to the Cherokee Reservation. Even when applying the balancing-of-interests test from White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980), the Supreme Court held in no uncertain terms that "Bracker does not bar the State from prosecuting crimes committed by non-Indians against Indians in Indian country." Castro-Huerta, 142 S. Ct. at 2501. There was no limitation of this holding to any one tribe and the opinion opens by noting that "[t]he classification of eastern Oklahoma as Indian country has raised urgent questions about which government or governments have jurisdiction to prosecute crimes committed there." Id. at 2492 (emphasis added). There is really no question that Castro-Huerta's holding applies throughout Oklahoma and, frankly, throughout the United States. Castro-Huerta says so plainly. Id. at 2504 n.9 ("The dissent . . . hints that the jurisdictional holding of the Court in this case may apply only in Oklahoma. That is incorrect. The Court's holding is an interpretation of federal law, which applies throughout the United States[.]" (emphasis added)). We therefore reject this claim.
¶15 Fourth, Appellant argues that due process requires that Castro-Huerta apply only prospectively because it unexpectedly increases the criminal liability to which he is exposed from dual-sovereign prosecution. This claim lacks merit. Castro-Huerta applies to cases pending on direct appeal before this Court. Ricker, , ¶ 5; State v. Ward, , ¶¶ 4-6, , 262-63. "New rules of criminal procedure generally apply to cases pending on direct appeal when the rule is announced, with no exception for cases where the rule is a clear break with past law." State ex rel. Matloff v. Wallace, , ¶ 8, , 689 (citing Griffith v. Kentucky, 479 U.S. 314, 323 (1987)). Castro-Huerta is not a substantive change in the criminal law that alters the range of punishment or the class of persons the law punishes for committing crimes. Nor does Castro-Huerta determine whether certain conduct is criminal, or whether punishment for a class of persons is forbidden by their status. Rather, Castro-Huerta affects only the manner of determining the defendant's culpability and imposed only procedural changes establishing that both the State and Federal Government may prosecute cases involving non-Indian defendants who perpetrate crimes against Indian victims on the reservation. Matloff, , ¶¶ 8, 27, 497 P.3d at 689, 692.
¶16 Bouie v. City of Columbia, 378 U.S. 347 (1964) stands for the proposition that the retroactive application of a judicial decision can violate due process in the same way as an ex post facto law made by the Legislature. "The Supreme Court has identified limited circumstances where the retroactive application of a judicial decision can violate due process in the same way as an ex post facto law." Barnett v. State, , ¶ 7, , 83. The underlying concern of Bouie and cases like it is ensuring that a defendant have "fair warning" of criminal liability. Rogers v. Tennessee, 532 U.S. 451, 459, 461-62 (2001); Barnett, , ¶ 7, 271 P.3d at 83. 
¶17 "In Bouie, the South Carolina Supreme Court had unexpectedly expanded 'narrow and precise statutory language' that, as written, did not reach the petitioner's conduct." Metrish v. Lancaster, 569 U.S. 351, 365-66 (2013) (quoting Bouie, 378 U.S. at 352). There is no such due process violation here because Castro-Huerta's interpretation of federal law did not "unexpectedly broaden[ ] a statute which on its face had been definite and precise" to reach Appellant's conduct and make it criminal. Bouie, 378 U.S. at 353. Castro-Huerta did not involve the interpretation of a penal statute setting forth the substantive definition of a crime at all, let alone make conduct by Appellant criminal that was not before. Nor, for that matter, does it address the defenses available or the available punishment for Appellant's crimes. Castro-Huerta instead addressed whether the State, the Federal Government, or both, could prosecute Appellant for his actions and conduct in this case which were plainly criminal under the laws of either sovereign. Castro-Huerta resolved the jurisdictional question of the appropriate forum for the prosecution of crimes committed by non-Indians against Indians on the reservation through its interpretation and application of federal law that predates Appellant's crimes.
¶18 Castro-Huerta therefore does not retroactively convert an innocent act into a crime through the "judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue[.]" Bouie, 378 U.S. at 354 (internal quotation omitted). The right to be tried in a particular forum does not implicate the Due Process Clause in this context. Relief is denied for Appellant's due process claim.
3. Appellant's Brief-in-Chief
¶19 Appellant raises three propositions of error in his brief-in-chief alleging trial errors. Appellant alleges that: 1) the District Court erred in admitting other crimes or bad acts evidence; 2) the instruction defining assault and battery with a deadly weapon was defective because it omitted the element of intent to kill; and 3) the District Court erred in admitting text message evidence, and photographs of the victim's injuries, because these exhibits were not properly authenticated.
¶20 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and the parties' briefs, we find that no relief is required under the law and evidence for these claims. Appellant's judgment and sentence is therefore AFFIRMED.
¶21 Proposition I. We review the trial court's ruling admitting evidence of other crimes or bad acts for abuse of discretion. Moore v. State, , ¶ 14, , 583. An abuse of discretion means "a conclusion or judgment that is clearly against the logic and effect of the facts presented." Id. Other crimes or bad acts evidence is generally inadmissible in a criminal trial. A criminal conviction "'must be based upon evidence establishing that the defendant committed the charged crime(s), rather than evidence of other offenses.'" Id. (quoting Miller v. State, , ¶ 89, , 966).
¶22 There was no abuse of discretion from the admission of the challenged evidence. "Where a defendant's domestic partner is the victim (or intended victim) of the charged crime, evidence of prior difficulties between the two can be relevant to show motive, intent, and the absence of mistake or accident." Harris v. State, , ¶ 49, , 952; (B).
¶23 In the present case, the other crimes or bad acts evidence was relevant to prove motive, intent and absence of mistake or accident. This evidence was also necessary to support the State's burden of proof. Here, Appellant denied committing the charged crimes, claimed that he had only hit the victim twice early in their relationship and suggested the victim had fabricated the charges because he was seeing another woman. Appellant also testified about his supposed physical infirmities--a blind eye, arthritis, an injured left leg and limited mobility raising his arms--suggesting that it was unlikely he was physically capable of committing the charged crimes. The other crimes or bad acts evidence was relevant to refute these assertions. Evidence that Appellant strangled to death the victim's German Shepherd puppy during an attack on M.P, like the rest of the other crimes evidence, demonstrated Appellant's controlling nature, helped explain the victim's fear of Appellant, explained why the victim did not previously report Appellant's abuse of her to authorities and showed the overall power and control dynamic in the relationship.
¶24 The other crimes evidence was proven by clear and convincing evidence through the victim's own testimony and was corroborated through photographs she took of some of her injuries, independent testimony from a store clerk who witnessed the incident outside the convenience store and testimony from a chiropractor who treated the victim over the years. The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misdirection of the jury. Use of OUJI-CR (2d) 9-9, the uniform limiting instruction for this evidence, in conjunction with the victim's testimony, and in the final written jury charge, further limited the possibility of a verdict rendered on improper grounds. See Moore, , ¶ 15, 443 P.3d at 584; . Proposition I is denied.
¶25 Proposition II. Appellant did not object to the jury instruction setting forth the elements for the crime of assault and battery with a deadly weapon, or otherwise request alterations, thus waiving review on appeal of all but plain error. Metoyer v. State, , ¶ 20, __P.3d__. Appellant must show an actual or obvious error affecting his substantial rights. "Even then, we only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice." Id.
¶26 Appellant fails to show error, plain or otherwise, because the instructions fairly and accurately stated the law. We have held that intent to kill is not an element of the crime of assault and battery with a deadly weapon as currently defined by statute. (C); Goree v. State, , ¶¶ 3-5, , 584-85. We have also expressly rejected requests over the years to reconsider our holding on this issue. Davis v. State, , ¶ 6, , 276-77; Tucker v. State, , ¶ 25, , 8-9. Nothing in Appellant's argument suggests we should alter this course. Because the instructions fairly and accurately stated the current statutory definition for this crime as set forth by controlling law, there was no error. Metoyer, , ¶ 21; Day v. State, , ¶ 14, , 298-99. The intent to kill is not an element of assault and battery with a deadly weapon, and "'it would be error to instruct jurors otherwise.'" Davis, , ¶ 6, 419 P.3d at 276 (quoting Tucker, , ¶ 25, 395 P.3d at 8-9). Proposition II is denied.
¶27 Proposition III. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponents claims it to be." (A). Authentication may be proved by direct or circumstantial evidence. Pennington v. State, , ¶ 73, , 1371. Examples of proper authentication or identification include "[t]estimony that a matter is what it is claimed to be[,]" (B)(1), and "[a]ppearance, content, substance, internal patterns or other distinctive characteristics taken in conjunction with the circumstances[.]" Id., § 2901(B)(4).
¶28 There was no abuse of discretion from the admission of the challenged exhibits because they were properly authenticated through M.P.'s testimony. Appellant's various challenges to this evidence go to its weight, not admissibility. See Fixico v. State, , ¶ 6, , 582. Proposition III is denied.
DECISION
¶29 The Judgment and Sentence of the District Court is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022), the MANDATE is ORDERED issued upon delivery and filing of this decision.
AN APPEAL FROM
THE DISTRICT COURT OF HUGHES COUNTY
THE HONORABLE TIMOTHY OLSEN, DISTRICT JUDGE

APPEARANCES AT TRIAL
RHETT BUTNER
BUTNER & BUTNER
P.O. BOX 1460
WEWOKA, OK 74884
COUNSEL FOR DEFENDANT

APPEARANCES ON APPEAL
CHAD JOHNSON
GARRETT MARSHALL
OKLA. INDIGENT DEFENSE SYSTEM
P.O. BOX 926
NORMAN, OK 73070
COUNSEL FOR APPELLANT

PAUL B. SMITH
DISTRICT ATTORNEY
KAY HARGRAVE
ASST. DISTRICT ATTORNEY
HUGHES COUNTY
P.O. BOX 350
HOLDENVILLE, OK 74848
COUNSEL FOR THE STATE

JOHN M. O'CONNOR
OKLA. ATTORNEY GENERAL
ASHLEY L. WILLIS
ASST. ATTORNEY GENERAL
313 N.E. 21ST
OKLAHOMA CITY, OK 73105
COUNSEL FOR APPELLEE

OPINION BY: HUDSON, V.P.J.
ROWLAND, P.J.: CONCUR
LUMPKIN, J.: CONCUR
LEWIS, J.: CONCUR IN RESULTS
MUSSEMAN, J.: SPECIALLY CONCUR
FOOTNOTES
 Appellant is required to serve at least 85% of his sentences on Counts 1, 3, 4, 5 and 6 before becoming eligible for parole. (5),(10),(15).
 Castro-Huerta involved the General Crimes Act which governs the present case. Castro-Huerta, 142 S. Ct. at 2494-99. The General Crimes Act made the general laws of the United States applicable to Indian country where either the victim or the defendant is Indian, but not where both the victim and defendant are Indians. See 18 U.S.C. § 1152. Whereas, the Major Crimes Act extends federal criminal jurisdiction for specifically delineated offenses that are committed by Indian defendants in Indian country. See 18 U.S.C. § 1153.
 Mandate issued for our original Opinion in this case on October 15, 2021.
 Appellant's brief-in-chief was filed with this Court on May 21, 2020.

LEWIS, JUDGE, Concur in Results:
¶1 Appellant argues the Bracker analysis should be limited to the tribe at issue in Castro-Huerto the Cherokee nation. While his argument might be correct in a different context, he is simply wrong when considering Castro-Huerto and its application to a non-Indian defendant.
¶2 For this reason, I concur in results only.

MUSSEMAN, J., SPECIAL CONCURRENCE:
¶1 I concur in today's Summary Opinion, but write separately to expand on Appellant's Proposition II regarding the lack of an intent to kill element for assault and battery with a deadly weapon, in violation of (C). This Court held in Goree that the 1992 amendment to Section 652 removed any intent to kill element from assault and battery with a deadly weapon. Goree v. State, , ¶ 4, , 584; compare with .
¶2 As a result, if an implement is a deadly weapon, any mere assault and battery with the implement, regardless of how it is achieved, is sufficient to convict for assault and battery with a deadly weapon. For example, driving a pistol into someone's stomach a single time, or throwing a pistol at someone and striking their leg, are both sufficient under Section 652(C) for an assault and battery with a deadly weapon conviction to stand. I question whether the legislature's goal in removing the intent to kill element from (C) included a desire to criminalize these actions under this specific section when compared to the adjacent violation of (C), assault and battery by means or force likely to produce death.
¶3 It is not this Court's place to legislate, but merely to give effect to the laws enacted by the legislature. In keeping with this maxim, we construe statutes according to the plain and ordinary meaning of their language. State v. Breznai, , ¶ 14, , 689. Moreover, when statutory language is unambiguous, as I believe it is here, turning to additional interpretive devices is unnecessary. Newlun v. State, , ¶ 8, , 211. However, in a situation such as this, I feel it is incumbent upon this Court to bring the potentially unforeseen effects of the practical application of this statute to the legislature's attention so that they may have a clear opportunity to amend the language away from it, if they so choose.
¶4 Finally, while not specifically at issue in this case, I would invite the Oklahoma Uniform Jury Instruction Committee to review Assault and Battery Definitions Instruction OUJI-CR(2d) 4-28. Specifically its reliance on for a list of dangerous and deadly weapons. Section 1272 has been substantively changed numerous times since 2000, and the list of "offensive weapons" has been significantly altered. As such, it no longer appears that the definitions for dangerous and deadly weapon in OUJI-CR(2d) 4-28 accurately state the current law.