OSCN Found Document:BARKUS v. STATE

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 BARKUS v. STATE
2024 OK CR 25
Case Number: F-2022-1072
Decided: 08/29/2024
PHILLIP LEE BARKUS, Appellant v. THE STATE OF OKLAHOMA, Appellee

Cite as: 2024 OK CR 25, __ __

 

 

OPINION

LEWIS, JUDGE:

¶1 Phillip Lee Barkus, Appellant, was tried without a jury and found guilty of Count 1, possession of a firearm after former conviction of a felony, in violation of 21 O.S.Supp.2019, § 1283; Count 2, driving under the influence of alcohol or other intoxicating substance, subsequent offense, in violation of 47 O.S.Supp.2020, § 11-902; and Count 3, carrying a firearm while under the influence of alcohol or drugs, a misdemeanor, in violation of 21 O.S.Supp.2012, § 1289.9, in the District Court of Hughes County, Case No. CF-2021-8. The Honorable Trisha D. Smith, Associate District Judge, found Appellant guilty after two or more prior convictions and assessed punishment of ten years imprisonment each in Counts 1 and 2, and six months imprisonment in Count 3, and ordered the sentences served concurrently.

Facts

¶2 Appellant was apprehended by a sheriff's deputy who observed his pickup disobey a stop sign at Allen and Broadway streets in Holdenville. The driver's identification showed he was Phillip Barkus. Noticing the smell of alcohol, several sobriety tests followed that validated the deputy's suspicions of intoxication and led to Appellant's arrest. An inventory search yielded a rifle in the cab behind the driver's seat. Appellant admitted possessing the gun. At the bench trial, counsel stipulated to eleven prior felony convictions.

Analysis

¶3 In Proposition One, Appellant asserts that he is a Seminole Indian and challenges the State's legal authority to prosecute him for crimes committed in Indian Country. McGirt v. Oklahoma, 591 U.S. 894 (2020).[1] He preserved his claims in written motions and a series of hearings, with the trial court repeatedly denying relief. We review the court's factual findings for clear error and its legal conclusions on Indian status de novo. See Parker v. State, 2021 OK CR 17, ¶ 34, 495 P.3d 653, 665.

¶4 Appellant's burden was to meet the Rogers test[2] of Indian status "by producing prima facie evidence that he has some Indian blood and that he was recognized as an Indian by a tribe or the federal government." Id., 2021 OK CR 17, ¶ 32, 495 P.3d at 664 (citing State v. Klindt, 1989 OK CR 75, ¶ 5, 782 P.2d 401, 403). The burden would then shift to the State to rebut Appellant's evidence of Indian blood and/or tribal recognition by the greater weight of the evidence. Id.

¶5 Prima facie evidence is that which is "good and sufficient on its face, i.e., sufficient to establish a given fact . . . and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports." Wadkins v. State, 2022 OK CR 2, ¶ 9, 504 P.3d 605, 609-10 (internal quotations omitted).

¶6 Appellant's Seminole Freedmen[3] citizenship card lists his Indian blood quantum as 0/0. He offered two DNA tests indicating he had some Native American ancestry.[4] The State objected that these commercially available tests were unreliable and not properly authenticated. The trial court granted controlling weight to the tribal card's blood quantum and the lack of documented ancestry of Indian blood.

¶7 In his own testimony, Appellant admitted that he lacked any documentary evidence showing his biological relation to any person on the Seminole roll of Indians by blood. The Seminole Nation itself had previously rejected his request to alter his citizenship from Freedmen based on his Estelusti ancestry to Indian by blood.

¶8 The trial court found that while Appellant is a Seminole tribal member by virtue of his Estelusti ancestry, he was not an Indian under the Rogers test because he failed to show some Indian blood. On de novo review, we find these factual rulings were not clearly erroneous and the legal conclusions are sound.

¶9 This Court has yet to determine whether any DNA result would prove Indian blood for McGirt purposes.[5] We will not do so here. Appellant offered no expert or scientific evidence on the general reliability of DNA as proof of Indian ancestry, the reliability of the specific samples' collection and preservation, or the methods for analysis and interpretation of these tests.[6]

¶10 Such a determination would, at minimum, require expert testimony on the current state of DNA technology for proving ethnic ancestry, the scientific validity of the specific tests, the integrity of the sample, and the acceptance of such evidence in the relevant community. See generally Taylor v. State, 1995 OK CR 10, 889 P.2d 319, 327 (applying Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) to DNA profiling technology).

¶11 Appellant's Estelusti ancestry, his Freedmen citizenship, and his lifelong association with the Seminole Nation are not open to doubt. Appellant satisfies the recognition element of the Rogers test. But he has not shown the required prima facie evidence that he has some degree of Indian blood, and this disposes of his McGirt claim. Proposition One is denied.

DECISION

¶12 The judgment and sentence is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.18, App. (2024), the MANDATE is ORDERED issued upon delivery and filing of this decision.

APPEAL FROM THE DISTRICT COURT OF HUGHES COUNTY
THE HONORABLE TRISHA D. SMITH, ASSOC. DISTRICT JUDGE

 

 
 
 
 APPEARANCES AT TRIAL

 KENNETH WATSON
 228 ROBERT S. KERR #925
 OKLAHOMA CITY, OK 73102
 ATTORNEY FOR DEFENDANT

 JAMES E. TILLISON
 ASST. DISTRICT ATTORNEY
 200 N. BROADWAY
 HOLDENVILLE, OK 73102
 ATTORNEY FOR STATE
 
 
 APPEARANCES ON APPEAL

 KENNETH WATSON
 228 ROBERT S. KERR #925
 OKLAHOMA CITY, OK 73102
 ATTORNEY FOR APPELLANT

 GENTNER DRUMMOND
 ATTORNEY GENERAL
 SAMANTHA K. OARD
 ASST. ATTORNEY GENERAL
 313 N.E. 21ST ST.
 OKLAHOMA CITY, OK 73105
 ATTORNEYS FOR APPELLEE
 
 
 

 

OPINION BY: LEWIS, J.
ROWLAND, P.J.: Concur
MUSSEMAN, V.P.J.: Specially Concur
LUMPKIN, J.: Concur in Result
HUDSON, J: Specially Concur

FOOTNOTES

[1] The parties stipulated that Hughes County is Indian Country. See Purdom v. State, 2022 OK CR 31, ¶ 5, 523 P.3d 54, 56-57 (recognizing Hughes County is Indian Country for McGirt purposes).

[2] This two-part test for Indian status derives from United States v. Rogers, 45 U.S. 4 How. 567 (1846). See Parker, 2021 OK CR 17, ¶¶ 32 n.8, 35, 495 P.3d 653, 664-65 n.8 (stating that this Court follows the Rogers test for Indian status).

[3] Persons of African ancestry living among the Seminoles at the time of Indian removal were known as the Estelusti. The Dawes Commission's Seminole membership rolls consisted of a Seminole Blood Roll and a roll for Estelusti members called the Freedmen Roll. The Dawes Rolls are the authoritative evidence of Seminole tribal membership; any person descended from someone on either roll is eligible for Seminole citizenship. The modern Seminole Nation consists of fourteen smaller bands, including the Dosar Barkus and Bruner Bands composed of the descendants of Estelusti ancestors on the Freedmen Roll. Some on the Freedmen roll were understood to have some Indian blood, but Seminole descent is matrilineal: if a Seminole's mother was Estelusti and their father was Indian, that person was placed on the Freedman Roll. See Davis ex rel. Davis v. United States, 343 F.3d 1282, 1286-87 (10th Cir. 2003).

[4] The first was an Ancestry.com DNA test; the second was from DNA Diagnostic Center in Ohio. A third DNA test offered the purported profile of Appellant's mother.

[5] Though Parker involved an alleged Cherokee Freedmen descendant who attempted to offer DNA tests indicating some Indian blood, his claim failed on the recognition element of the Rogers test and rendered his DNA-related evidence moot. Parker, 2021 OK CR 17, ¶ 42, 495 P.3d at 667.

[6] The Bureau of Indian Affairs current online guide to tracing Indian ancestry advises that:

Blood tests and DNA tests will not help an individual document his or her descent from a specific Federally recognized tribe or tribal community. The only value blood tests and DNA tests hold for persons trying to trace ancestry to a particular tribe is that testing, if the tribe accepts it, can establish if an individual is biologically related to a tribal member.

U.S. Dept. of Interior Bureau of Indian Affairs, "Tracing American Indian and Alaska Native Ancestry," https://www.bia.gov/guide/tracing-american-indian-and-alaska-native-aian-ancestry (accessed May 22, 2024).

 

 

MUSSEMAN, V.P.J., SPECIALLY CONCURRING:

¶1 I join the Court's opinion in full. Ultimately, Appellant fails to meet the first prong of the Rogers[1] test, i.e., provide prima facie evidence that he has some degree of Indian blood. I write separately, however, to clarify the rationale behind our finding of recognition under the second prong of the Rogers test. See supra ¶ 11.

¶2 In addition to the first prong of the Rogers test requiring some quantum of Indian blood, which the Court focuses on in its Opinion, courts must also determine Indian recognition in the second prong. In this second prong, courts consider the following factors:

1) tribal enrollment;
2) government recognition formally and informally through receipt of assistance reserved only to Indians;
3) enjoyment of the benefits of tribal affiliation; and
4) social recognition as an Indian through residence on a reservation and participation in Indian social life.

Wadkins v. State, 2022 OK CR 2, ¶ 7, 504 P.3d 605, 609 (quoting Parker v. State, 2021 OK CR 17, ¶ 40, 495 P.3d 653, 666).

¶3 In this case, the trial court below found, and the record before this Court demonstrated, recognition as an Indian by a tribe or the federal government pursuant to the above factors, thus demonstrating prima facie evidence of recognition under Rogers. Nonetheless, without prima facie evidence that Appellant has some degree of Indian blood to satisfy the first prong of the Rogers two-pronged test, Appellant's claim that the court lacked jurisdiction is foreclosed.

¶4 I am authorized to state Judge Hudson joins in this separate writing.

FOOTNOTES

[1] United States v. Rogers, 45 U.S. 567 (1846).

 

 

LUMPKIN, JUDGE: CONCUR IN RESULTS

¶1 While I concur in the results reached in this case, I write to address some misstatements of this Court's scope of review on appeal.

¶2 In Proposition I, the opinion states that this Court reviews for "clear error" and cites to Parker v. State, 2021 OK CR 17, 495 P.3d 653. However, in Parker we stated:

We afford a district court's factual findings that are supported by the record great deference and review those findings for an abuse of discretion. Young v. State, 2000 OK CR 17, ¶ 109, 12 P.3d 20, 48. We decide the correctness of legal conclusions based on those facts without deference. See Gomez v. State, 2007 OK CR 33, ¶ 5, 168 P.3d 1139, 1141-42 (reviewing a trial court's ruling on a motion to suppress evidence based on a complaint of an illegal search and seizure with deference to the trial court's factual findings unless not supported by competent evidence and a trial court's legal conclusions based on those facts de novo); Salazar v. State, 2005 OK CR 24, ¶ 19, 126 P.3d 625, 630 (giving district court's factual findings strong deference, but deciding without deference ultimate claim of trial counsel effectiveness).

2021 OK CR 17, ¶ 34, 495 P.3d at 665.

¶3 Once before, "clear error" was used in Underwood v. State, 2011 OK CR 12, 252 P.3d 221 where the Court said:

Appellant timely renewed his motion to suppress at trial. These issues have been preserved for full appellate review. We review the district court's factual findings for clear error; its analysis of applicable law is reviewed de novo. State v. Pope, 2009 OK CR 9, ¶ 4, 204 P.3d 1285, 1287.

2011 OK CR 12, ¶ 12, 252 P.3d at 232.

¶4 At that time, I provided the following analysis:

However, I do have concerns about the syntax used in describing our appellate review. As to Proposition 1, the opinion states "we review the district court's factual findings for clear error ..." when, in fact, on appeal, this Court reviews a trial court's ruling on the facts for an abuse of discretion. "An abuse of discretion has been defined as a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented." Marshall v. State, 2010 OK CR 8, ¶ 24, 232 P.3d 467, 474 (citing State v. Love, 1998 OK CR 32, ¶ 2, 960 P.2d 368, 369). See also Stouffer v. State, 2006 OK CR 46, ¶ 60, 147 P.3d 245, 263 (citing C.L.F. v. State, 1999 OK CR 12, ¶ 5, 989 P.2d 945, 947); Slaughter v. State, 1997 OK CR 78, ¶ 19, 950 P.2d 839, 848--849 (citing R.J.D. v. State, 799 P.2d 1122, 1125 (Okl.Cr.1990)) (quoting Stevens v. State, 94 Okl.Cr. 216, 225, 232 P.2d 949, 959 (1951)). While the abuse of discretion standard includes an evaluation of whether the judge's decision is clearly erroneous, we have not adopted a separate standard labeled "clear error." We must be careful with the words we use due to the fact our readers evaluate those words for future arguments. Slight changes give rise to arguments that standards of review have changed when in fact they have not. I would just urge the Court to be consistent in the verbiage it uses to explain the methods utilized in analyzing issues on appeal.

2011 OK CR 12, 252 P.3d at 259 (Lumpkin, J. Concur in Result).

¶5 I continue to adhere to that analysis as the correct method to apply to cases on appeal where allegations of error have been preserved. When objections have not been made at trial, thus preserving the claim of error, we continue to apply the "plain error" analysis set forth in Simpson v. State, 1994 OK CR 40, ¶¶ 10, 26, 30, 876 P.2d 690, 694, 699, 701 and Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. To avoid confusion by the bench and bar this Court must be consistent in its analysis and the syntax used in its opinions.

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1989 OK CR 75, 782 P.2d 401, 
STATE v. KLINDT
Discussed

 
1990 OK CR 68, 799 P.2d 1122, 
R.J.D. v. STATE
Cited

 
1994 OK CR 40, 876 P.2d 690, 
SIMPSON v. STATE
Discussed

 
1995 OK CR 10, 889 P.2d 319, 
TAYLOR v. STATE
Discussed

 
2005 OK CR 24, 126 P.3d 625, 
SALAZAR v. STATE
Discussed

 
2006 OK CR 19, 139 P.3d 907, 
HOGAN v. STATE
Discussed

 
2006 OK CR 46, 147 P.3d 245, 
STOUFFER v. STATE
Discussed

 
2007 OK CR 33, 168 P.3d 1139, 
GOMEZ v. STATE
Discussed

 
2009 OK CR 9, 204 P.3d 1285, 
STATE v. POPE
Discussed

 
2010 OK CR 8, 232 P.3d 467, 
MARSHALL v. STATE
Discussed

 
2011 OK CR 12, 252 P.3d 221, 
UNDERWOOD v. STATE
Discussed at Length

 
2021 OK CR 17, 495 P.3d 653, 
PARKER v. STATE
Discussed at Length

 
2022 OK CR 2, 504 P.3d 605, 
WADKINS v. STATE
Discussed at Length

 
2022 OK CR 31, 523 54, 
PURDOM v. STATE
Cited

 
1951 OK CR 86, 232 P.2d 949, 94 Okl.Cr. 216, 
STEVENS v. STATE
Cited

 
1997 OK CR 78, 950 P.2d 839, 69 OBJ 87, 
Slaughter v. State
Discussed

 
1998 OK CR 32, 960 P.2d 368, 69 OBJ 1897, 
State v. Love
Discussed

 
1999 OK CR 12, 989 P.2d 945, 70 OBJ 946, 
C.L.F. v. State
Discussed

 
2000 OK CR 17, 12 P.3d 20, 71 OBJ 2286, 
Young v. State
Discussed

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 1283, 
Convicted Felons and Delinquents
Cited

 
21 O.S. 1289.9, 
Carrying Weapon Under the Influence of Alcohol
Cited

Title 47. Motor Vehicles

 
Cite
Name
Level

 
47 O.S. 11-902, 
Persons Under the Influence of Alcohol or Other Intoxicating Substance or Combination Thereof
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA